No. 81-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOHN MARSHALL KRAMP,

Defendant and Appellant.

---

Appeal from: District Court of the Fifth Judicial District,
In and for the County of Beaverhead
Honorable Frank Blair, Judge presiding.

Counsel of Record:

For Appellant:

Leaphart Law Firm, Helena, Montana
W. William Leaphart argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McGrath argued, Assistant Attorney General, Helena,
Montana
W. G. Gilbert, III, County Attorney, Dillon, Montana

---

Submitted: May 14, 1982

Decided: September 23, 1982

Filed: SEP 24 1982

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

John M. Kramp appeals from a judgment of conviction of felony theft in the District Court, Fifth Judicial District, Beaverhead County. The conviction was based on a jury verdict. Kramp was sentenced to five years in the Montana State Prison and designated a nondangerous offender for purposes of parole eligibility.

In 1980, Red Pine Exploration and Development, Ltd., contracted with Coyote Mining Company, of which Kramp is president to perform $15,000 worth of development work on the Red Pine Mine near Sheridan, Montana.

Kramp and his employees arrived at the mine on December 23, 1980 and found the mine's air compressor was not functioning. The agreement between the companies allowed Kramp to rent equipment necessary for the performance of the development work. Kramp acquired an air compressor valued at $23,000 for use at the mine. The disputed facts pertaining to that acquisition are set forth here.

On January 8, 1981, the Beaverhead County Sheriff's Department received a telephone call from a foreman of General Construction Company reporting a stolen Ingersoll Rand Compressor from a construction site. The sheriff later went to the construction site and saw tire tracks indicating that the compressor had been pulled onto the highway from the General Construction Company site.

When a local miner heard the January 10 report of the theft on the radio, he called the sheriff's office to report that he had seen the Red Pine Mine's truck pulling an air compressor past his home at 6:45 a.m., January 7, 1981. Another man also reported seeing the Red Pine Mine's truck pulling an air compressor on the morning of January 7, 1981.

On the basis of these reports, the sheriff's officers went to the mine and found the missing air compressor parked on the side of the road leading to the mine.

Kramp testified that he and one of his employees went to a rental agency in Butte, Montana, on January 5, 1981, to rent an air compressor. Kramp spoke to a man in the parking lot at the rental agency who informed Kramp that although he did not have an air compressor for rent, a friend of his did. The man then telephoned the friend, one "Ed," and Kramp negotiated rental terms with Ed over the telephone. Ed agreed to deliver the compressor at the bottom of a hill near the mine on the following day. Kramp agreed to pay Ed $1,000 in cash for one month's rental of the compressor.

At 5:30 p.m., January 6, 1981, Kramp and one of his employees went to the bottom of the hill where they found Ed, with the compressor, and Ed's dual wheel pickup truck which he had used to tow the compressor. Kramp paid Ed $1,000 in cash but received no receipt. Before leaving, Ed agreed orally to return for the compressor in about a month. Kramp hitched the compressor to a truck owned by the Red Pine Mine and began towing the compressor up the hill to the mine. The trailer hitch on the truck broke, however. One of Kramp's employees welded the hitch and again they tried to tow the compressor up the hill. The road was too slippery to proceed, so they unhitched the compressor and returned to the mine.

Kramp and his employees spent the next few days at the mine site attempting to repair a caterpillar which they would use to pull the compressor the rest of the distance of the mine. The men were repairing the caterpillar on January 10, when sheriff's deputies arrived at the mine site and placed them under arrest.

-3-

Kramp raises the following issues on appeal:

1.  Did the State's suggestion on cross-examination that Kramp had an FBI criminal record constitute prejudicial error?

2.  Did the District Court's instructions no. 6 and 13 create an unconstitutional presumption against Kramp?

3.  Is the jury's verdict supported by the evidence?

The first issue is a charge of prosecutorial misconduct. During the trial, the defense called a witness, Barbara Thomas, to testify to the character of Kramp. Her direct examination was in essence as follows:

"Q.  You've known this young man for some time. You know his reputation for truth, integrity and veracity?  A.  Yes, sir.

"Q.  What is it?  A.  I think he is honest.

"Q.  You wouldn't be here if you didn't think so?  A.  That's right."

On cross-examination, the county attorney asked:

"Q.  Mrs. Thomas, have you ever heard that John Kramp was arrested for driving while under the influence of alcohol in Denver, Colorado?  A.  No sir.

"Q.  Have you ever heard that he was arrested in Sheridan, Montana?  A.  No I haven't.

"Q.  Do you know that the FBI and the State of Colorado both have criminal record files on him? A.  No I surely didn't.  May I say why I didn't.

"Q.  No, just answer yes or no.  Obviously you don't know as much about him as you thought you might.  A.  Well we had a Pinkerton investigation that his father conducted after this and they turned up nothing.

"Q.  They couldn't find the man who rented him the compressor either, did they?  A.  I don't guess they could, but they didn't mention the FBI either."

Following the examination, there was a meeting in chambers with the judge. It developed that on that particular morning of the trial a teletype sheet had been received by

the county attorney which showed that Kramp had been arrested for driving under the influence of liquor in Colorado, and for a traffic offense in Sheridan, Montana. The teletype printout also showed a Colorado state file number and an FBI file number. Defense counsel was given a copy of the teletype at the conclusion of the conference and he used the information to question Sheriff Later about the significance of an FBI file number. The State argues that any prejudice which may have resulted from the county attorney's references was removed by Later's subsequent testimony:

"Q. You're Sheriff Later who was previously sworn and testified in this case? A. Yes, sir.

"Q. And Sheriff Later, you heard the testimony of the defendant's witnesses . . . and the cross-examination by the county attorney Mr. Gilbert. You heard that a few minutes ago? A. Yes, sir.

"Q. And you heard the county attorney refer to an FBI number. What does that mean? A. That means that anytime anybody is fingerprinted --

"Q. Then they have an FBI number. A. Well, their fingerprints are sent into the FBI head- quarters in Washington, D.C. and from that, the fingerprints, they are issued an FBI number, basically.

"Q. Would you have an FBI number? A. No.

"Q. Would I? I've been in the service. A. I believe so.

"Q. If I applied for a job, Bruce Watters' job as postmaster, would I have an FBI number. A. I'm not sure--

"Q. In other words, having an FBI number doesn't mean that you have some criminal record. A. Well, I'm not sure counselor, how FBI numbers are issued. I think they are issued for everything but I am not positive as far as applicants and that type of thing but it is very possible."

The sheriff also testified that "at this time" they did not have a rap sheet on Kramp, but often times rap sheets come in for as long as a year after the request.

-5-

Kramp contends the jury, as a result of the interrogation, was left with the following impressions:

1. That the defendant Kramp did in fact have a criminal file record with the FBI, and,

2. That although no evidence of his criminal activity has shown up as yet, other records may still be coming in.

An offer of evidence by a defendant of a pertinent trait of his character is admissible, and an offer of evidence by the prosecution to rebut the same is also admissible. Rule 404(a)(1), M.R.Evid. The key word to this exception to the general rule that character evidence is not admissible (Rule 404(a)) is the word "pertinent." It was pertinent where the charge is felony theft for Barbara Thomas to testify to Kramp's general reputation for truth, integrity, honesty and veracity. (She did not quite testify to his general reputation, but gave her own opinion; that however, is now permissible under Rule 405(a), M.R.Evid.) It was impertinent for the prosecution to attempt to establish an arrest record based on a traffic offense, or an intoxicated driving violation, because (1) an arrest record has no substance of itself to establish character, and (2) the traits of character involved in traffic or drinking offenses do not inherently relate to honesty or veracity.

In Michelson v. United States (1948), 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168, the Supreme Court upheld an inquiry of a reputation witness about an arrest, upon the ground that an arrest may impair or cloud one's reputation. The dissent in that case argued against turning the defendant's trial for a specific offense into one for all of his previous misconduct, criminal or otherwise. Recently, however, the supreme court of Pennsylvania considered the Michelson

-6-

decision, and declined to follow, stating that an arrest is equally consonant with guilt or innocence. Commonwealth v. Scott (Pa. 1981), 436 A.2d 607.

The trait of character testified to by a reputation witness limits perforce the type of cross-examination that may be pursued. Under Rule 405(a), M.R.Evid., cross-examination is allowed into "relevant, specific instances of conduct." By this rule, unless the cross-examination is pointed to a "relevant" trait of character testified to on direct examination the cross-examination is not permissible. We find that to be the case here.

The State also argues that the testimony of the sheriff removed any taint from the cross-examination. We answer in the words of State v. Shannon (1933), 95 Mont. 280, 288, 26 P.2d 360, 363:

> "It is urged by the State that the above error was not substantial and that under . . . our codes this Court must regard technical errors or defects which do not go to the substantial rights of the parties. What, then, is a substantial right? Manifestly a right declared by statute must be considered substantial. Section 10668, R.C.M. 1921 provides that a witness may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or by the record of the judgment, that he has been convicted of a felony . . . [t]his Court reversed convictions because of the asking of questions similar to those propounded to the defendant here . . . the court said: 'The attorney could have had no other object in view than to impeach the defendant or degrade him in the estimation of the jury, and for either purpose the questions are forbidden by statute,' (citing a case). The rule was announced by this court many years ago. (Citing cases.) In State v. Rogers, supra, the court specifically adhered to the rule, and approved the leading California case on the subject with the remark that it was unnecessary to repeat the discussion (citing a case.)"

Here the prosecution's case against the defendant rests upon circumstantial evidence. Imputing to him by indirection

a criminal record, and one related to traits of character not involved in the specific offense for which the defendant was charged here, was certainly substantial. State v. Shannon, supra, 95 Mont. at 289, 26 P.2d at 364. This means that the defendant did not receive a fair trial, and upon that ground we must reverse. Commonwealth v. Scott, supra.

We consider the second issue raised by the defendant because a retrial of this cause appears necessary.

The second issue arises from the following instructions presented to the jury:

> "6. Possession of stolen property shall not constitute proof of the commission of the offense of theft; such facts shall place a burden on the possessor to remove the effect of such fact as a circumstance to be considered with all other evidence pointing to his guilt.
>
> ". . .
>
> "13. Possession of stolen property is merely one item that you, as jurors, may consider in determining whether the defendant committed the crime of theft. The defendant is not obligated to explain his possession of the stolen property, but in this case the defendant has chosen to do so."

Instruction no. 6 is couched in the exact language of section 45-6-304, MCA. Kramp attacks the instruction and the statute as unconstitutional on its face, in that: (1) it creates a rebuttable presumption, (2) it places a burden of persuasion upon the defendant as to the effect of possession, and (3) it undermines the "beyond a reasonable doubt" standard of proof in that it contains no time constraints (e.g., recent possession) nor is it limited to "exclusive possession." In support of his contentions, he cites Sandstrom v. Montana (1979), 442 U.S. 510; Ulster County, New York v. Allen (1979), 442 U.S. 140; Wells v. People (Colo. 1979), 592 P.2d 1321, and People v. Chavez (Colo. 1981), 632 P.2d 574.

The State answers that neither the statute nor the instruction create a presumption, and that in any event the instructions do not relieve the state of its burden to prove all elements of the crime charged. The State also relies on Ulster County v. Allen, supra, contending therefrom that evidentiary devices such as presumptions and inferences are a staple of our adversary system of factfinding.

The State's argument that neither a presumption or an inference is created by instruction no. 6 and its underlying statute is bolstered by instruction no. 13, shown above, which informs the jury that possession of stolen property is merely one item of evidence which the jury may consider in determining whether defendant committed the crime of theft.

An examination of instructions 6 and 13 will demonstrate that they are, to say the least, contradictory. No. 6 tells the jury that the fact of possession shall "place a burden" on Kramp to remove the effect of such possession. Instruction no. 13 tells the jury that Kramp "is not obligated to explain his possession" of the stolen property. Instruction no. 6 places a burden on Kramp to explain that he possessed the stolen property by lawful means. Instruction no. 13 tells the jury he does not have to explain his possession of the stolen property.

The District Court can hardly be blamed for the contradictory instructions. It seems evident the District Court was merely trying to accommodate the conflicting statements in our earlier decisions on the subject, and a compelling statute. It should be obvious that the possession by a defendant charged with theft of recently stolen property is a fact which the jury is entitled to consider in determining

-9-

the guilt of the defendant. A grave problem arises, however, when the instructions on the subject deprive or interfere with the presumption of innocence which always attaches to the defendant until convicted, and his right to remain silent.

In State v. Greeno (1959), 135 Mont. 580, 342 P.2d 1052, Greeno, charged with grand larceny, was convicted after the jury had been instructed in part:

> "You are instructed that the mere possession of stolen property, howsoever soon after the taking, unexplained by the person having possession is not sufficient to justify conviction. It is however, a circumstance to be considered in connection with other evidence in determining the question of innocence or guilt. If you should find from the evidence that the property involved in this case was stolen, and that thereafter the defendant was found in possession or claimed to be the owner of the stolen property, such a fact would be a circumstance tending in some degree to show guilt although not sufficient, standing alone and unsupported by other evidence, to warrant finding him guilty. In addition to proof of possession of such property, there must be proof of corroborating circumstances tending, of themselves, to establish guilt. Such corroborating circumstances may consist of the acts, conduct, falsehood, if any, or other declarations, if any, of the defendant, or any other proved circumstance, tending to show the guilt of the accused.

> "One who is found in the possession of stolen property is bound to explain such possession in order to remove the effect of that fact as a circumstance, to be considered with all other evidence, pointing to his guilt, and if he gives a false account of how he acquired that possession, or, having reasonable opportunity to show that his possession was honestly acquired, he refuses or fails to do so, such conduct is a circumstance that tends to show his guilt."

The court in Greeno, based on the last paragraph of the foregoing instruction, found that the defendant had been denied a fair trial and due process upon these grounds:

-10-

> "The defendant, presumed to be innocent, is
> not charged with any duty to explain his possession
> of any property, stolen or otherwise. He need not
> testify at the trial and this fact may not be
> commented upon in any way prejudicial to the defendant.
> The burden of explaining set out in the instruction
> deprives the defendant of his cloak of innocence and
> forces him to testify, both results being contrary
> to express statutes of the state of Montana . . ."
> 135 Mont. at 591, 342 P.2d at 1058.

Moreover, in Greeno, this Court expressly overruled two earlier cases, "to the extent they impose upon a defendant a burden to explain or testify concerning any charge of possessing stolen goods." · (It should be noted that this portion of the Greeno opinion was not concurred in by a majority of the Court.)

In State v. Rose (1980), ___ Mont. ___, 608 P.2d 1074, 37 St.Rep. 642, this Court, where Rose had been convicted of burglary as an accomplice, had before it this instruction:

> "You are instructed that one who is found in
> the possession of property that was stolen
> from burglarized premises is bound to explain
> such possession in order to remove the effect
> of that fact as a circumstance to be considered
> with all other evidence pointing to his guilt."

Although the instruction told the jury that the defendant was "bound to explain such possession" in Rose we nevertheless approved the instruction upon the ground that it merely told the jury to consider the defendant's possession of the stolen goods as one factor indicating his guilt, and because he had elected to testify in an attempt to explain away the circumstance of possession.

In Rose, we were following the lead of State v. Gray (1968), 152 Mont. 145, 447 P.2d 475, in which again on a burglary charge, Gray was convicted after the jury was instructed:

> "One who was found in possession of property
> that may have been stolen from burglarized
> premises, is bound to explain such possession
> in order to remove the effect of that fact

-11-

as a circumstance, to be considered with other evidence, pointing to his guilt . . ."

In Gray, although the defendant relied on Greeno, this Court pointed out that the discussion of the instruction was by a minority of the court in Greeno and then determined to follow the lead of Arizona v. Pederson (1967), 102 Ariz. 60, 424 P.2d 810, cert.den. 389 U.S. 867, 88 S.Ct. 138, 19 L.Ed.2d 142. The import of Arizona v. Pederson was that if the defendant wished to remove the effect of possession of stolen property from the facts to be considered by the jury, the defendant should have offered some explanation of his possession.

It is the rationale and holding in Arizona v. Pederson followed by this Court in Gray that apparently gave birth to the adoption in our criminal code of section 45-6-304, MCA, as it was originally enacted in 1973.

The defendant, however, brings us to a fresh consideration of the problem in this case, arguing that the effect of the statute and instruction no. 6 is to create a presumption which is constitutionally improper under the holding of United States Supreme Court in Sandstrom v. Montana, supra, and Ulster County v. Allen, supra.

In Ulster, the United States Supreme Court said that a presumption "must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State to find the ultimate fact beyond a reasonable doubt." Ulster, page 156.

The State on the other hand, contends that neither the statute, section 45-6-304, MCA, nor the instruction raises a presumption. It contends that the statute and the instruction do not require an assumption of any fact (here the theft) to be made from another fact (here the possession) so as to be within the definition of presumption set forth in Rule 301, M.R.Evid.

-12-

We agree with the State that a presumption is not created by either the statute or the instruction. Neither requires the jury to assume the fact of theft from the fact of possession. The first clause of the statute belies that.

Nonetheless, section 45-6-304, MCA, and instruction no. 6 have facial and applicative constitutional defects: they take away defendant's presumption of innocence and force him to testify, by placing a burden on him either to disprove unlawful possession or to prove lawful possession.

Certain principles adhere. Proof of possession of stolen property standing alone may be as consistent with innocence as with guilt. Yet the jury ought at least be allowed to consider unexplained possession of stolen property, and from that fact infer that he participated in the theft. The burden of proving every essential element of the theft must always be on the State. The defendant is never required to take the witness stand and furnish an explanation of the possession. If he does testify as to his possession, whether his explanation is credible is a matter to be determined by the jury. Instructions to the jury incorporating these principles should properly inform the jury how to apply the fact of possession in determining the guilt or innocence of the defendant. See State v. Proctor (1969), 153 Mont. 90, 454 P.2d 616.

We declare here that section 45-6-304, MCA, is unconstitutional and that any instruction using the language of such statute is prejudicial to a defendant.

The possession of the stolen property by the defendant in this case is an important facet of the evidence because it is the only direct fact in the evidence which indicates the defendant's guilt. The rest of the case against him is

-13-

circumstantial.  Because of that situation, it is important that the jury be properly instructed as to the effect it may give, in considering a verdict, to the defendant's unauthorized possession of the stolen property.

We would support on retrial, the following instruction on the point:

> "Unauthorized control or possession of property belonging to another is ordinarily a circumstance from which the jury may draw an inference and find, in the light of all the evidence in the case, that the person in possession committed the theft of the property.
>
> "You are permitted but not required to infer from the defendant's possession of the property of another that the defendant is guilty of theft only if in your judgment such an inference is warranted by the evidence as a whole.  It is your exclusive province to determine whether the facts and circumstances shown by the evidence warrant the inference to be drawn by you.
>
> "The possession of the property by the defendant does not shift the burden of proof which is always on the State to prove beyond a reasonable doubt every essential element of the offense with which defendant is charged.
>
> "The defendant's possession of property belonging to another may be satisfactorily explained in the evidence independently of any testimony of the defendant personally.  If defendant does take the witness stand to explain his possession of the property, the weight to be attached to his explanation is exclusively for you to determine.  Even if defendant's possession of the property is unexplained, you cannot find him guilty, if after consideration of all the evidence in the case, you have a reasonable doubt as to his guilt.
>
> "If under the evidence, defendant's possession of the property of another is consistent with his innocence, then the jury should acquit the defendant unless he has been proven guilty beyond a reasonable doubt by other evidence in the case."  (See appendix to Wells v. People (Colo. 1979), 592 P.2d 1321, 1326.)

It is unnecessary for us to reach the third issue in this case since the cause must be retried.

The judgment of conviction is reversed and the cause is

remanded for retrial of the defendant, consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices