No. 81-328

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WILLIAM "BILL" MORIGEAU,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Lake
Honorable John Henson, Judge presiding.

Counsel of Record:

For Appellant:

Turnage and McNeil, Polson, Montana
C. B. McNeil argued, Polson, Montana
James A. Manley argued, Polson, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Steve Johnson argued, Assistant Attorney General, Helena, Montana
Richard P. Heinz, County Attorney, Polson, Montana
Duke R. Wolf argued, Deputy County Attorney, Polson, Montana

---

Submitted: October 14, 1982

Decided: December 29, 1982

Filed: DEC 29 1982

Thomas J. Kearney
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The defendant, William "Bill" Morigeau, was charged in the District Court of the Fourth Judicial District, Lake County, with two counts of felony burglary. A jury returned a verdict of guilty to both counts. Morigeau was sentenced to ten years in prison and designated a dangerous offender. Morigeau appeals and presents the following issues:

1. Whether the evidence of the State's immunized witness was sufficiently corroborated?

2. Whether defendant was provided effective assistance of counsel at trial?

The verdict is vacated and the cause is remanded for a new trial.

While working together on a Housing and Urban Development Project at Pablo, Montana, Morigeau and Kevin Groat became friends and decided to share a house in Ronan, Montana. They began moving into the house on October 28, 1980. Morigeau testified that he, Groat, and a Mexican, Fortino Gonzales who had been staying with Groat, drank some beer as they were moving into the house. That night all three man slept in the living room of the house as it was the only room which was heated.

According to Groat's testimony, before the men went to sleep, he and Morigeau went to Davis, Inc., which is located across the street from the apartment Groat was moving out of. Groat broke a window and climbed in and then let Morigeau in through a door. They began picking up tools and began carrying small boxes over to Morigeau's car which was parked across the street. They drove the car over to Davis, Inc. to load the larger boxes which weighed as much as 195 lbs. They returned to the house and unloaded the car. The tool boxes were divided up and placed in the men's respective bedrooms and some in the basement.

Morigeau testified that on the next day, he, Groat, and "the Mexican" finished moving Groat's belongings into the house using the Morigeau car, and that the first time he saw the items taken from Davis, Inc. was when they moved them from Groat's apartment to the house. Morigeau testified that he let Groat keep some of the tool boxes in the closet in his bedroom because Groat's bedroom was full.

That evening Morigeau and Groat were driving to Polson when Morigeau's car broke down. A sheriff's deputy gave them a ride to Ronan and dropped them off in front of Pete's Conoco which is two blocks from the house. The sheriff's deputy testified that he dropped the men off at approximately 12:30 a.m.

Morigeau testified that after the men walked to the house they both walked to their boss's house where Morigeau left a note on the windshield of the boss's truck telling him that the car had broken down "so we had to walk and didn't get home till just now (3:00) so we won't be able to make it to work today . . ." They then returned to the house and Morigeau went to sleep in the living room and assumed Groat had also.

According to Groat's testimony, after being dropped off and walking to the house, the two men returned to Pete's Conoco. Groat broke a window, climbed in, and opened a door to let Morigeau in. He testified that Morigeau was looking for new tires and picked out six and they both rolled them over to the house and placed four tires in the basement and left two outside. They returned to Pete's Conoco and took a saw, bolt cutter, and a case of Pennzoil. The saw was placed on a shelf in the basement of the house while the oil and bolt cutter were put in Morigeau's closet. After a third trip, change, candy bars, and six cans of oil treatment were taken back to the house. Groat testified

-3-

they then walked to their boss's house and left a note on the windshield of his truck and then went to the house and went to sleep.

The following afternoon, sheriff's deputies searched the house with the consent of Morigeau. When asked about the items in his closet, Morigeau stated that they were there when he moved in except for the oil which was his. At trial Morigeau testified that he first saw the oil and bolt cutter while the sheriff was conducting his search, and although he had hung clothing in the closet earlier that day, he didn't notice the case of oil. A logging chain missing from Davis, Inc., was found in the trunk of Morigeau's car.

I.

Whether the evidence of the State's immunized witness was sufficiently corroborated?

Morigeau argues that the record is void of any evidence of entry by him into either the Davis, Inc. or Pete's Conoco building and is void of any evidence of theft by him except for the uncorroborated testimony of the State's immunized witness, Groat, who voluntarily confessed to being an accomplice.

Section 46-16-213, MCA, requires corroboration of the testimony of an accomplice.

> "A conviction cannot be had on the testmony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The general principles of corroborating evidence are stated in State V. Kemp (1979) 182 Mont. 383, 387, 597 P.2d 96, 99:

-4-

"To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. State v. Keckonen (1938), 107 Mont. 253, 263, 84 P.2d 341, 345. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. State v. Gangner (1957), 130 Mont. 533, 535, 305 P.2d 338, 339. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facie case against him. State v. Ritz (1922), 65 Mont. 180, 186, 211 P. 298, 300; State V. Stevenson (1902), 26 Mont. 332 334, 67 P. 1001, 1002. Corroborating evidence may be circumstantial (State v. Harmon (1959), 135 Mont. 227, 233, 340 P.2d 128, 131) and can come from the defendant or his witnesses. State v. Phillips (1953), 127 Mont. 381, 387, 264 P.2d 1009, 1012."

Morigeau contends that without Groat's testimony "there is not sufficient evidence to convict the defendant of either burglary." As noted above, that is not the test. Corroborative evidence need not be sufficient to support a conviction or even make out a prima facie case, but need only tend to connect the defendant with the commission of the offense. 46-16-213, MCA.

In State v. Williams (1979)____Mont.____, 604 P.2d 1224, 36 St.Rep. 2328, the defendant was storing property taken in a burglary at his mother-in-law's house and he gave other property to another party. This constructive possession of the property taken was held by this Court to be sufficient corroborating evidence to clearly connect the defendant with the commission of the offense.

In State v. Rose (1980)____Mont.____, 608 P.2d 1074, 37 St.Rep. 642, the only independent evidence which tended to connect the defendant with the burglary was his possession of the guns which were stolen. The defendant tried to explain away his possession of the stolen guns, but this Court held that the defendant's possession of the guns was sufficient as a matter of law to corroborate the accomplice's testimony and that whether the explanations were sufficiently

-5-

satisfactory to raise a reasonable doubt in the minds of the jurors as to defendant's connection with the offense charged was a question for the jury's determination. Rose, 608 P.2d at 1078-80, 37 St. Rep. 647; State v. Broell (1930), 87 Mont. 284, 292, 286 P. 1108, 1111.

In the present case, tool boxes, identified as belonging to Davis, Inc., were found in Morigeau's closet. A bolt cutter, identified as belonging to Pete's Conoco, was also found in Morigeau's closet. A logging chain, identified as belonging to Davis, Inc., was found in the trunk of Morigeau's car. Morigeau's possession of these items is sufficient as a matter of law to corroborate Groat's testimony. Morigeau chose to testify in an attempt to explain away the possession. The weight of that evidence is for the jury. Morigeau's testimony also contains elements which could be found corroborating in nature by the jury.

We hold there was sufficient corroborative evidence, tending to connect Morigeau with the commission of the offense in order to satisfy the statutory requirements of corroboration of the testimony of Groat.

II.

Whether defendant was provided effective assistance of counsel at trial?

Morigeau raises three areas where defense counsel did not provide effective assistance of counsel:

1. failure to locate and interview certain witnesses,

2. failure to conduct pretrial discovery or file pretrail motions,

3. allowing defendant's criminal record into evidence.

The effectiveness of counsel issue was returned to the District Court for an extraordinary hearing. The lower court found defense counsel used every means available to locate witnesses. The court, however, failed to make any

-6-

findings with regard to defense counsel bringing defendant's criminal record into evidence.

During the hearing defense counsel stated, "I had no intention of bringing in his criminal record. What I intended to do was to have him testify that he was on parole, from a prior offense, which I believe it was an unrelated offense of forgery."

During the trial Morigeau was questioned by his defense counsel about previous offenses:

"Q. Bill, have you ever been convicted of any other felonies other than that?
A. Yes, I have.

"Q. How many? A. Assault, two.

"Q. Two others? A. Yes.

"Q. Assault and what else? A. Assault and escape.

"Q. Where was that? A. Assault was in Boise, Idaho; and the escape was in Spokane, Washington.

"Q. As an adult, have you ever been convicted of any burglaries or thefts? A. No, sir.

"Q. Have you ever been charged with any burglaries? A. Yes, sir.

"Q. I beg your pardon? A. Yes, sir.

"Q. What? A. A burglary in Boise.

"Q. What was the disposition of that charge?
A. It got dismissed.

"Q. Why? A. Illegal search and seizure."

During cross examination, the State brought out the details of the previous burglary charge.

"Q. Do you recall a violation being reported by entering without permission, a Western Cabinet shop in Garden City, Idaho, and removing a CB radio and camera? A. That was dismissed.

"Q. On what basis was it dismissed? A. Illegal search and seizure.

"Q. Was that violation true? A. No.

"Q. But the basis for its dismissal was an illegal search and seizure? A. Yes.

-7-

"Q. What was seized illegally at that time?
A. I don't know. There was some stolen articles in the house that me and this other man occupied. He let them in. He let them into the house where they found the stuff, and I was charged for it.

"Q. Is that similar to what happened here?
A. Exactly.

"Q. So in other words, there was a time when you were charged with having stolen something based on a supposed illegal search? A. Yes.

"Q. This other individual, do you feel that he was responsible for that theft? A. He was responsible.

"Q. Was he charged with that? A. No, he wasn't, as far as I know.

"Q. You seem to have a lot of occurrences, then, or at least one previous occurrence where you were found with stolen property; is that correct? A. Yes.

"Q. Are you often found with stolen property?
A. No, sir."

In closing argument, defense counsel argued that (1) Groat knew of Morigeau's criminal record and that it would be easy to put the blame on him, (2) Morigeau was too streetwise to do such amateurish burglaries, and (3) Morigeau had too much to lose as a parole violator to become involved in the burglaries.

To determine whether a defendant has been denied effective assistance of counsel, this Court uses the "reasonably effective assistance" test, which has been stated as follows:

> "'Persons accused of crime are entitled to the effective assistance of counsel acting within the range of competence demanded of attorneys in criminal cases.'" State v. Rose (1980) ____ Mont.____, 608 P.2d at 1081, 37 St.Rep. at 649-650; Fitzpartick v. State (1981)____Mont.____, 638 P.2d 1002, 1007, 38 St.Rep.1448, 1451; Cooper v. Fitzharris (9th Cir. 1978) 586 F.2d 1325, 1330.

> "'Claimed inadequacy of counsel must not be tested by a greater sophistication of appellate counsel, nor by that counsel's unrivaled opportunity to study the record at leisure and cite different tactics of perhaps doubtful efficacy. Success is not a test of efficient counsel, frequently neither vigor, zeal, nor skill can overcome the truth.'" State v. Rose, 608 P.2d at 1082, 37 St.Rep. at 652; State v. Forsness (1972) 159 Mont. 105, 110, 495 P.2d 176, 178-179.

To sustain a claim of ineffective assistance, a criminal defendant must show that the error allegedly committed by his lawyer resulted in prejudice to him and stemmed from neglect or ignorance rather than from informed, professional deliberation. State V. Rose, 608 P.2d at 1081, 37 St.Rep. at 651; United States v. Bosch (1st Cir. 1978) 584 F.2d 1113, 1121.

Defense counsel's choice of the tactic to show that Morigeau was on parole is not at issue here. However, this Court will consider the effect of the introduction of Morigeau's entire criminal record including the burglary charge in Idaho.

By bringing in the previous criminal charges, defense counsel opened Morigeau to cross examination on the previous charges. The result was that the jury had before it evidence from Morigeau demonstrating his involvement in an alleged burglary where Morigeau claimed another man brought stolen articles into the house where he was staying. This evidence would not have been admissible except for the actions of defense counsel. The evidence was extremely prejudicial showing circumstances almost identical to the present case. This indicates neglect or ignorance on the part of counsel and satisfies the State v. Rose test. We hold that the introduction and direct examination of Morigeau by his counsel regarding his previous crimes and charges were not within the range of competence demanded of attorneys in criminal cases.

During the trial the following jury instruction was given:

> "You are instructed that possession of stolen property shall not constitute proof of the commission of the offense of theft. Such fact shall place a burden on the possessor to remove the effect of such fact as a circumstance to be considered with all the other evidence pointing to his guilt."

On retrial this instruction, which is taken from section 45-6-304, MCA, should not be used. This Court in State v. Kramp (1982)____Mont.____, 651 P.2d 614, 39 St. Rep. 1819, declared section 45-6-304, MCA, unconstitutional and held that any instruction using the language of that statute was prejudicial to a defendant. This is another ground for reversal. The instruction takes away defendant's presumption of innocence and forces him to testify, by placing a burden on him either to disprove unlawful possession or to prove lawful possession. State v. Kramp 651 P.2d at 621, 39 St.Rep. at 1827. For further discussion and a suggested alternate instruction see State v. Kramp.

The verdict is vacated and the cause is remanded for a new trial.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

-10-