
DA 07-0474

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 252

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

CHARITIE LYNN SHIVELY,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 06-182A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James B. Wheelis, Chief Appellate Defender; David Avery, Assistant Appellate Defender; Tammy Hinderman, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs:  July 28, 2009

Decided:  July 30, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     A jury in the Eighteen Judicial District Court, Gallatin County, convicted Charitie L. Shively (Shively) of theft for knowingly exercising unauthorized control of a welder to deprive the owner of its use, a felony. The District Court deferred imposition of her sentence for three years, subject to various conditions. Shively appeals, raising the following issues:

¶2     1. Must Defendant's conviction be reversed because there was no evidence that she knew the welder had been stolen?

¶3     2. Did the District Court err by failing to instruct the jury that Defendant could not be convicted absent proof beyond a reasonable doubt that she knew the welder was stolen?

¶4     3. Did prosecutorial tactics render Defendant's trial unfair?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5     In the summer of 2005, a welder was stolen from Sletten Construction Company (Sletten). On August 25, Shively pawned the welder for $800 at Debos Pawn Shop in Bozeman, telling David Curry, an employee of the pawnshop, that the $800 was needed to bail her boyfriend out of jail. Later, Shively and her boyfriend returned to the pawnshop and borrowed another $812 against the welder. A Sletten employee noticed the welder in the pawnshop, and informed the equipment manager at Sletten that a Sletten-owned welder was there. The equipment manager then matched the equipment number of the welder at the pawnshop with that of the stolen welder.

2

¶6 Shively was charged by information with one count of felony theft under § 45-6-301(1), MCA, specifically, with having "purposely or knowingly obtained or exerted unauthorized control" over Sletten's welder "with the purpose of depriving Sletten Construction of the property."

¶7 At trial, the State called Sletten's equipment manager and Curry as witnesses, who testified to the facts detailed above. Curry also indicated that Shively gave no indication that she knew the welder had been stolen. At the conclusion of the State's case-in-chief, Shively moved the court for a directed verdict.[1] The court ruled that the State had presented sufficient evidence to support a conviction, and therefore denied Shively's motion. Shively offered no evidence and rested. During closing argument, the prosecutor argued there was no requirement within the jury instructions "that the State has to prove that the Defendant knew this property was stolen." The jury returned a guilty verdict. Shively appeals.

## STANDARD OF REVIEW

¶8 "The denial of a motion to dismiss in a criminal case is a question of law and we review a district court's conclusions of law to determine whether those conclusions are correct." *McWilliams*, ¶ 22.

¶9 We review a court's jury instructions for abuse of discretion. *State v. Field*, 2005 MT 181, ¶ 16, 328 Mont. 26, 116 P.3d 813. A district court has broad discretion in

---

[1] We have since explained that "there is no statutory authority for referring to a motion to dismiss for insufficient evidence as a 'motion for directed verdict.'" *State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont. 517, 178 P.3d 121, 65 U.C.C. Rep. Serv. 2d 143.

3

instructing the jury and the instructions must "as a whole, fully and fairly instruct the jury on the applicable law." *Field*, ¶ 16 (quotation omitted).

## DISCUSSION

¶10   **1.  Must Defendant's conviction be reversed because there was no evidence that she knew the welder had been stolen?**

¶11   Shively argues in her opening brief that her "theft conviction must be reversed . . . because, as the prosecutor correctly admitted, there was no evidence that [she] knew that the welder she pawned had been stolen."  Her argument is not a challenge to the sufficiency of the evidence generally, or even to the evidence of mental state generally, but, rather, is a narrow argument directed to a very specific point:  the absence of evidence that Shively *knew the welder had been stolen*.  As she opines, "[i]t's not illegal in Montana to pawn a stolen object if you don't know it's stolen."  She follows this argument by asking that the State be estopped from asserting that any evidence was presented on this point, or that the jury was properly instructed that proof of this knowledge was required for conviction, given the prosecutor's comments to the contrary during the trial.  She offers that her appeal "is the State's opportunity to disavow itself of this conviction" and that it "should concede that [her] conviction must be reversed."

¶12   The State has not taken Shively up on the offer.  Responding to Shively's opening brief, the State does not seek to excuse either the prosecutor's comments or the jury instructions.  Rather, the State argues that "a plain reading of § 45-6-301(1)(a) shows that the State was never obligated to prove Shively actually knew the welder was stolen.  Her

4

issue fails ab initio."  Characterizing Shively's appeal, the State argues that "Shively stakes so much" on "a matter of law."

¶13     Given the particular posture of the issues and arguments, and our resolution of this appeal by an interpretation of the theft statute, we have not cited the standard of review for challenges to the sufficiency of the evidence, under which we review the evidence in a light most favorable to the prosecution and determine whether a rationale trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. *See State v. Meckler*, 2008 MT 277, ¶ 9, 345 Mont. 302, 190 P.3d 1104.  The issue raised by Shively does not ultimately require us to review evidence, and therefore we review the legal issue raised here, a matter of statutory interpretation, de novo for correctness. *McWilliams*, ¶ 22; *State v. Triplett*, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819 ("the interpretation and construction of a statute is a matter of law and we review whether the district court interpreted and applied a statute correctly de novo.").[2]

¶14     The provision of the theft statute under which Shively was charged states:

> (1) A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
>     (a) has the purpose of depriving the owner of the property . . .

Section 45-6-301(1), MCA.  Subsection (3) of that statute provides:

---

[2] Shively substantially expands the scope of her arguments and legal theories in her reply brief, where she also challenges the sufficiency of the evidence that she "knew she was exercising control over another's property and that [she] knew that this control was not authorized by the owner."  However, these are new arguments not raised in her opening brief, which we will not address. *See* M. R. App. P. 12(3); *In re Estate of Bovey*, 2006 MT 46, ¶ 11, 331 Mont. 254, 132 P.3d 510.

(3) A person commits the offense of theft when the person purposely or knowingly *obtains control over stolen property knowing the property to have been stolen* by another and:
>    (a) has the purpose of depriving the owner of the property;
>    (b) purposely or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
>    (c) uses, conceals or abandons the property knowing that the use, concealment or abandonment probably will deprive the owner of the property.

Section 45-6-301(3), MCA (emphasis added). Further definitions forming a part of these provisions are as follows:

> (35) "Knowingly"—a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. Equivalent terms, such as "knowing" or "with knowledge", have the same meaning.

> (46) "Obtains or exerts control" includes but is not limited to the taking, the carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property.

> (65) "Purposely"—a person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is the person's conscious object to engage in that conduct or to cause that result. When a particular purpose is an element of an offense, the element is established although the purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense.

Section 45-2-101, MCA.

¶15 Shively first argues that the plain language of subsection (1) of § 45-6-301, MCA, unambiguously requires proof that she knew the welder was stolen. The State answers that it unambiguously does not. Shively, noting the requirement under subsection (3) that

6

a person must know the property was stolen, alternatively argues that "subsection (3) makes clear that proof of knowledge that the item was stolen is necessary for a theft conviction. The specific language of subsection (3) controls any ambiguity that lies in subsection (1)." She also argues that subsection (3), being the more specific of the two provisions, controls over the more general terms of subsection (1).

¶16 The State argues that the plain language of subsection (1) merely requires that a person "obtains or exerts unauthorized control" over property of the owner with the purpose to deprive the owner. The State argues that a person can obtain unauthorized control over property without it first being stolen, such as in *State v. Long*, 227 Mont. 199, 738 P.2d 487 (1987). In *Long*, we affirmed the defendant's conviction for theft of a boat where he initially exercised lawful control with the owner's permission, but later exceeded the permission governing its use. *Long*, 227 Mont. at 204, 738 P.2d at 490-91; *see also State v. White*, 230 Mont. 356, 750 P.2d 440 (1988) (defendant convicted of theft for failing to return the owner's truck after the owner withdrew permission for the defendant to use it).

¶17 The Commission Comments, which we recently cited in *State v. Meeks*, 2008 MT 40, ¶ 9, 341 Mont. 341, 176 P.3d 1073, while addressing the elements of theft under this statute, speak to this interpretational issue:

> *While the method by which unauthorized control is obtained or exerted is immaterial in subsection* (1), and probably, in conjunction with one of the subdivisions (a), (b), or (c), would cover all forms of theft the commission felt that such an approach might be too concise, and might create problems of application, in view of the large body of statutory material and the large number of offenses it is intended to replace. Therefore, subsections (2) and (3) were added, to cover the specific offenses of theft by threat or deceit

7

and receipt of stolen property, *although the commission intends that all forms of theft could be charged and proved under subsection* (1).

Section 45-6-301 (Commission Comments) (emphasis added). The Comments explain that while the statute defines several specific theft offenses, including the knowing receipt of stolen property under subsection (3), nonetheless, subsection (1) is a general provision under which "all forms of theft" can be charged. Further, the Comments explain that "the method by which unauthorized control" is exerted under subsection (1) "is immaterial." Thus, there is not a requirement under subsection (1) that a person act without authorization only by receiving stolen property or with knowledge that the property was stolen—although that would be one method of doing so. The statute under which Shively was charged requires that the State prove (1) the defendant purposely or knowingly exerted unauthorized control over the property of another, and (2) the defendant had the purpose of depriving the owner of the property. An Annotator's Note to the statute offers this explanation:

> Because subsection (1) makes no distinction concerning the way in which the property was obtained, the subsection should cover all conceivable forms of theft including receiving stolen property. *Because only two elements must be proved under this subsection, a knowing exertion of control and a purpose to deprive*, the provision represents a considerable simplification from the traditional approach.

Section 45-6-301 (Annotator's Note) (emphasis added).

¶18 We thus conclude that the State was not required to prove that Shively knew the welder was stolen pursuant to the charge under subsection (1). Although it is not incumbent in this case that we look to the State of Illinois, the source of our statutory provision, in order to reach our conclusion, we simply note that Illinois courts have held

8

that it is permissible to charge and convict a defendant under the general theft provisions even though the evidence would support a conviction under the more specific statute. *See Ill. v. Sherman*, 441 N.E.2d 896 (1982); *Ill. v. McCormick*, 235 N.E.2d 832 (1968).

¶19 **2. Did the District Court err by failing to instruct the jury that Defendant could not be convicted absent proof beyond a reasonable doubt that she knew the welder was stolen?**

¶20 Shively's second issue mirrors her first. She argues that the District Court erred "by refusing to instruct the jury that [she] could not be found guilty of theft absent proof beyond a reasonable doubt that she knew the welder was stolen." The State responds that "Shively simply proposed a mental state that was not an element of the offense that the jury could properly consider." Given our resolution of the first issue, we must agree with the State. While Shively was free to argue that the mental states required by the elements of the crime were not proven, knowledge that the welder was stolen was not an element under the crime as charged. Thus, the court did not err in refusing to instruct the jury that Shively could not be found guilty of theft absent proof that she knew the welder was stolen.[3]

¶21 **3. Did prosecutorial tactics render Defendant's trial unfair?**

¶22 Shively asks the Court to invoke the common law plain error doctrine to review the prosecutor's "numerous improper tactics" to which she did not object at trial. Shively argues the prosecutor's decision to charge her, proposed jury instruction of "knowingly,"

---

[3] As with the first issue, Shively broadens her argument and theories in her reply brief by challenging the other mental states required under the charge, but we do not address those additional arguments.

voir dire tactics, opening statement, and closing argument compromised her right to a fair trial.

¶23 We do not generally address issues not raised at trial. An exception to this general rule is the common law plain error doctrine. We adopted this limited exception to permit a review of "claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996) (*overruled on other grounds State v. Gallagher*, 2001 MT 39, ¶ 12, 304 Mont. 215, 19 P.3d 817). However, we use this power sparingly, on a case-by-case basis, and will not invoke the doctrine if the alleged error did not result in manifest injustice or compromise the integrity of the judicial process. *See State v. Raugust*, 2000 MT 146, 300 Mont. 54, 3 P.3d 115; *State v. Rogers*, 257 Mont. 413, 849 P.2d 1028 (1993); *State v. Arlington*, 265 Mont. 127, 875 P.2d 307 (1994).

¶24 Having reviewed the facts and circumstances herein, we conclude that this case is not appropriate for the exercise of plain error review. Much of the conduct to which Shively now objects arises from her mistaken belief that the prosecution was required to prove she knew the welder was stolen, and acted contrary to that requirement. Therefore, we decline to address Shively's claim related to the prosecutor's actions.

¶25    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice James C. Nelson, dissenting.

¶26    I respectfully dissent.

¶27    The statute under which Shively was charged and convicted states as follows:

> A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and . . . has the purpose of depriving the owner of the property.

Section 45-6-301(1)(a), MCA (2003) (paragraph break omitted).

¶28    Shively argues that under this language, the State had to prove that she knew her control over the property at issue (the welder) was unauthorized.[1]    The State argues,

---

[1] The Court perceives Shively's claim to be that the State had to prove specifically that she knew the welder had been stolen. Opinion, ¶¶ 11, 15. The Court then explains that there is no requirement in § 45-6-301(1), MCA, that the person act without authorization only by receiving stolen property. The Court opines that there may be other methods of acting without authorization. Opinion, ¶ 17. But this is not Shively's argument. She does not contend that § 45-6-301(1), MCA, requires that unauthorized control be obtained or exerted by a certain "method." Rather, her argument is that the defendant must know that her control—however it came about—is unauthorized, and she translates that to mean, on the particular facts of this case, that she knew the welder had been stolen. *See e.g.* Brief of Appellant at 3, 6, 8, 16, 17, and Errata at 2. For this reason,

11

however, that it had to prove only that Shively "purposely or knowingly 'exercise[d] authoritative or dominating influence over' the welder for which she had no 'grant of authority or power[, or] . . . permission" (brackets and ellipsis in State's brief; citing *American Heritage Dictionary of the English Language* (4th ed. 2002)). In other words, the State interprets the statute as requiring proof that Shively purposely or knowingly obtained or exerted control over the welder and proof that such control was unauthorized, but not proof that she knew the control was unauthorized. In the State's view, the "unauthorized" nature of the control need not be purposeful or knowing. It could be entirely inadvertent and innocent but still constitute theft.

¶29 This is consistent with the prosecutor's theory of the case and the evidence presented at trial. The testimony of the State's two witnesses established that someone stole the welder from Sletten Construction in the summer of 2005 and that Shively pawned the welder on August 25, 2005. That's it. The prosecutor offered no evidence that Shively knew her exertion of control over the welder on August 25 was unauthorized. Indeed, the prosecutor told the jury that he did not need to prove such knowledge.

¶30 In this respect, the prosecutor was in error, as is the State on appeal. The statute does not state that the person must simply "obtain or exert unauthorized control over property of the owner." Nor does it state merely that the person must "purposely or knowingly obtain or exert control over property of the owner." It states, rather, that the

I disagree with the Court that Shively is not challenging the sufficiency of the evidence. *See* Opinion, ¶¶ 11, 13.

person must "*purposely or knowingly* obtain[ ] or exert[ ] *unauthorized* control over property of the owner." Furthermore, the person must have "the purpose of depriving the owner of the property." It is patently obvious that a person does not "purposely or knowingly" obtain or exert "unauthorized control" over property of the owner with the purpose of depriving the owner of the property if the person does not even know that her control over the property is unauthorized. If the person does not have felonious purpose or knowledge, then she cannot be convicted of theft.

¶31   Any other interpretation of the statute would lead to absurd results, contrary to the well-settled canon that " '[s]tatutory construction should not lead to absurd results if a reasonable interpretation can avoid it.' " *Bitterroot River Protective Assn. v. Bitterroot Conservation Dist.*, 2008 MT 377, ¶ 72, 346 Mont. 507, 198 P.3d 219 (quoting *Montana Sports Shooting Assn. v. Dept. of Fish, Wildlife, and Parks*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003). For example, say that Dick lends Jane his car to transport Spot to the vet. Jane drives off. Suddenly, Dick changes his mind. Under the State's theory, Jane is guilty of theft because her control over the car is no longer authorized, although she has no knowledge of Dick's change of heart and although she is not acting with a purpose to exert "unauthorized control" over the car. Even as applied to the facts of this case, the State's theory leads to absurd results. If a person is guilty of theft merely by exerting unauthorized control over Sletten's welder, whether or not he or she knows such control is unauthorized, then Curry (the pawn shop employee) is as guilty as Shively is. Indeed, if any member of the public had purchased the welder on Craig's List believing it to be the offeror's to sell, that person could be charged with and convicted of theft under

13

the State's theory here. There is no evidence in the statutory language—or, for that matter, in the Commission Comments and Annotator's Notes recited by the Court in ¶ 17—to support this absurd interpretation of § 45-6-301(1)(a), MCA.[2]

¶32 For these reasons, I cannot agree with the Court's holding that the State was not required to prove Shively's knowledge regarding the status of the welder. Opinion, ¶¶ 17, 18. The statute requires proof that the defendant "purposely or knowingly" obtained or exerted "unauthorized control" over property of the owner with the purpose of depriving the owner of the property. Thus, the State in fact had to prove that Shively, in acting with the purpose of depriving Sletten of its welder, was at least "aware of a high probability" that she was exerting unauthorized control over the welder. *See* § 45-2-101(34), (64) MCA (2003) (defining "knowingly" and "purposely"). The State could have done so by showing that she had stolen the welder herself or that she knew it had been stolen by someone else. But the prosecutor presented no such evidence, erroneously believing that he had no obligation to do so.

¶33 Given this error, the State now argues on appeal that "[p]roof that the item she exclusively possessed had been stolen recently, even absent proof she knew it was stolen, provided an adequate circumstantial inference that Shively purposely or knowingly exerted unauthorized control." In other words, the State contends that "the jury was

---

[2] Incidentally, resort to Commission Comments and Annotator's Notes is, as the State puts it, "inappropriate" and "not warranted," given that the language of the statute is unambiguous. *See Montana Sports Shooting*, ¶ 11. Indeed, Shively and the State both agree that the "plain" language of § 45-6-301(1), MCA, controls here. In this connection, Shively's arguments based on § 45-6-301(3), MCA, which the Court analyzes in ¶ 17, are offered as alternative arguments in the event this Court concludes that subsection (1) is ambiguous. *See* Brief of Appellant at 15. They are not her primary theory.

14

entitled to make a reasonable inference of her guilt based on her possession of recently stolen property." This argument, however, is implausible and totally without merit, given that the prosecutor specifically told the jury that the State did not need to prove that Shively knew her exertion of control over the welder on August 25, 2005, was unauthorized.

¶34 Moreover, I do not agree with the State that such an inference is reasonable here. *State v. Long*, 227 Mont. 199, 738 P.2d 487 (1987), *State v. White*, 230 Mont. 356, 750 P.2d 440 (1988), and *State v. Meeks*, 2008 MT 40, 341 Mont. 341, 176 P.3d 1073, cited by the State and by the Court (Opinion, ¶¶ 16, 17), are distinguishable on their facts. In *Long*, the defendant acknowledged that he had exercised unauthorized control over the property at issue. *Long*, 227 Mont. at 201, 738 P.2d at 488. In *White*, the property owner "communicated to [the defendant] his lack of authority to continue driving the truck," but the defendant nevertheless continued to use, conceal, or abandon the truck in such a manner as to deprive the owner of the property. *White*, 230 Mont. at 357, 750 P.2d at 440. And in *Meeks*, the evidence reflected that the defendant would walk into a store, load a shopping cart with merchandise, and then take it to the return counter and "return" the items without a receipt, usually in exchange for a store gift card. Or he would take bar-code stickers from less expensive items and put them on more expensive items, then purchase the more expensive items at the lesser price. Or he would bring a receipt into a store, pick up the items listed on that receipt from store shelves, and then take the items to the return counter for a cash refund. *Meeks*, ¶ 3. In light of this evidence, a jury could reasonably infer that the defendant knew his control over the gift cards, the cash refunds,

15

and the merchandise purchased for less than the original marked price was unauthorized. In the present case, by contrast, the State offered nothing more than that Shively possessed Sletten's property, that the property had previously been stolen by someone, and that she pawned it. On this minuscule evidence, the jury convicted her of theft, either inferring that she knew her control over the welder was unauthorized or ignoring this element altogether.

¶35    Besides my disagreement with the Court's rendering of § 45-6-301(1)(a), MCA, I have reservations about how the Court's Opinion may be used in future cases and concerns about the constitutionality of the Court's interpretation. Because the State did not offer evidence that Shively either stole the welder or knew that it was stolen—and the Court holds that the State in fact did not need to produce such evidence—the jury was left to find guilt based on Shively's mere possession of the welder. All the State proved was that Shively pawned a welder that belonged to Sletten, thus leaving the jury to infer from these two facts that she knew her control over the welder was unauthorized.

¶36    The State's failure to present specific evidence concerning Shively's purpose or knowledge put her in the position of having to take the stand to disprove the State's case. If she exercised her constitutional right not to testify[3]—which she did—then she ran the risk of being convicted—which she was—on the basis of mere possession of or association with the welder.

---

[3] U.S. Const. amend V; Mont. Const. art. II, § 25.

¶37    In this regard, we stated in *State v. Kramp*, 200 Mont. 383, 651 P.2d 614 (1982):[4]

> Nonetheless, section 45-6-304, MCA, and instruction no. 6 have facial and applicative constitutional defects:  they take away defendant's presumption of innocence and force him to testify, by placing a burden on him either to disprove unlawful possession or to prove lawful possession.
>
> Certain principles adhere.  Proof of possession of stolen property standing alone may be as consistent with innocence as with guilt.  Yet the jury ought at least be allowed to consider unexplained possession of stolen property, and from that fact infer that he participated in the theft.  The burden of proving every essential element of the theft must always be on the State.  The defendant is never required to take the witness stand and furnish an explanation of the possession.  If he does testify as to his possession, whether his explanation is credible is a matter to be determined by the jury.  Instructions to the jury incorporating these principles should properly inform the jury how to apply the fact of possession in determining the guilt or innocence of the defendant.

*Kramp*, 200 Mont. at 396, 651 P.2d at 621.

¶38    The statute at issue in *Kramp* (§ 45-6-304, MCA (1979)) is not at issue here.  But the problem addressed in *Kramp* is the same problem here.  Shively was convicted of theft under § 45-6-301(1)(a), MCA, based on her mere possession and pawning of a welder that someone had previously stolen from Sletten.  Yet, the statute requires proof of felonious purpose or knowledge:  at the very least, an awareness of a high probability that his or her control over the property at issue is unauthorized.  If such purpose or knowledge may be inferred from mere possession, as the State argues and the Court apparently holds, then the defendant is put in the position of having to take the stand at

---

[4] In *Kramp*, the Court declared unconstitutional § 45-6-304, MCA (1979).  *Kramp*, 200 Mont. at 396, 651 P.2d at 621.  This statute provided:  "Possession of stolen property shall not constitute proof of the commission of the offense of theft.  Such fact shall place a burden on the possessor to remove the effect of such fact as a circumstance to be considered with all other evidence pointing to his guilt."  The statute was repealed in 1991.  *See* Laws of Montana 1991, ch. 188, § 2.

trial in order to disprove the State's case and show that she did not know her control over the property was unauthorized. We implicitly declared this approach unconstitutional in *Kramp*. *See Kramp*, 200 Mont. at 391-96, 651 P.2d at 619-21; *see also State v. Campbell*, 178 Mont. 15, 18-19, 582 P.2d 783, 785 (1978); *State v. Treible*, 275 Mont. 59, 63-65, 910 P.2d 237, 239-40 (1996) (Leaphart & Erdmann, JJ., dissenting) (arguing that "mere association" with a stolen article is not sufficient to show control over the stolen article in order to sustain a conviction of theft under § 45-6-301(1)(a), MCA).

¶39　Of course, we stated in *Kramp* that the jury ought to be allowed to consider unexplained possession of stolen property and, from that fact, infer that the defendant participated in the theft. However, we also stated that proof of possession of stolen property, "standing alone," may be as consistent with innocence as with guilt, and we emphasized that the burden of proving every essential element of the theft must always be on the State: "The defendant is never required to take the witness stand and furnish an explanation of the possession."[5] *Kramp*, 200 Mont. at 396, 651 P.2d at 621. In this regard, the evidence presented in *Meeks*—e.g., that the defendant took bar-code stickers from less expensive items and put them on more expensive items and then purchased the more expensive items at the lesser price—is a good example of evidence from which a jury could reasonably infer that the defendant knew his control over the property at issue was unauthorized. In *Meeks*, therefore, the defendant was not convicted based on proof

---

[5] Along these same lines, we devised a jury instruction under which the jury may infer from the defendant's possession of the property of another that the defendant is guilty of theft, but only if such an inference is "warranted by the evidence as a whole." *See Kramp*, 200 Mont. at 396-97, 651 P.2d at 621-22.

18

of possession of stolen property "standing alone." *See also e.g. State v. Kelley*, 2005 MT 200, ¶¶ 20-21, 328 Mont. 187, 119 P.3d 67. Here, by contrast, the prosecutor expressly relied on proof of possession of stolen property "standing alone." He presented no other facts from which a rational fact-finder could reasonably infer that Shively knew her control over the welder was unauthorized.

¶40 It appears, therefore, that we are heading down the same unconstitutional path we rejected in *Kramp*—i.e., we are permitting the State to prove theft based on nothing more than the defendant's possession or "mere association" with stolen property, thereby forcing her to take the stand to disprove the State's case. Obviously, the fact that the defendant knew her control over the property was unauthorized may be proved circumstantially. But, as we pointed out in *Kramp* and *Campbell*, circumstantial evidence must in fact be presented by the State. The State did not do so here; as a matter of fact, the State told the jury it did not need to do so. Thus, to the extent the Court's Opinion may be read to say that the prosecution does not need to offer such evidence in a prosecution under § 45-6-301(1)(a), MCA, I disagree. The State is not entitled to make its case on the defendant's choice to exercise her constitutional right to remain silent and put the State to its proof.

¶41 In sum, I conclude that under § 45-6-301(1)(a), MCA, the State must prove that the defendant had knowledge that her control over the property at issue was unauthorized. Proof of possession of stolen property, standing alone, is not sufficient to establish such knowledge. Thus, I would hold that the evidence presented at Shively's trial is

insufficient to sustain her conviction of theft. I would reverse the District Court's judgment and remand with instructions to dismiss the case with prejudice.

¶42   I dissent.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins the Dissent of Justice James C. Nelson.

/S/ PATRICIA O. COTTER

Justice W. William Leaphart joins the Dissent of Justice James C. Nelson.

/S/ W. WILLIAM LEAPHART