No. 82-92

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

ROBIN CHARLES SMITH,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Patterson, Marsillo, Tornabene & Schuyler; Charles
J. Tornabene argued, Missoula, Montana
Ferguson & Mitchell, Missoula, Montana

        For Respondent:

            Hon. Mike Greely, Attorney General, Helena, Montana
James W. McLean argued, Asst. Atty. General, Helena
Robert L. Deschamps, County Attorney, Missoula, Montana

---

        Submitted:    April 21, 1983

        Decided:     October 6, 1983

Filed: OCT 6 - 1983

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Following a jury trial, defendant Robin Smith was found guilty of burglary, forgery, and solicitation. The District Court of the Fourth Judicial District, Missoula County, sentenced the defendant to 40 years in the Montana State Prison, with 25 years suspended. Defendant appeals his conviction to this Court. We affirm.

In Spokane, Washington, during the evening of March 6, 1981, the defendant and Cindy Clardy attended a party at the home of Penny Braun. There, Clardy stole two purses from the residence, including one belonging to Penny Braun. Clardy took the purses to obtain identification cards for cashing checks.

Clardy and the defendant gave different accounts of what happened after they left the party. According to Clardy, she and the defendant then drove from Spokane for Missoula, Montana. They stopped in Idaho for the night because of headlight trouble. After reaching Missoula the next day, they drove around town looking for places from which they might steal payroll checks.

After checking into a motel and eating dinner, the defendant and Clardy resumed their patrol of Missoula businesses. Some time that evening, the defendant parked the car, while Clardy waited. He returned with a number of items, including a check protector, 27 blank checks and about $430, which he brought to the car.

The next day, Clardy and the defendant attempted to use the typewriter they had brought from Spokane to fill out the blank checks. However, the typewriter was broken, so Clardy

used an identification card belonging to Penny Braun to rent another typewriter. The rented typewriter was never returned.

The forged instruments were Missoula Sheet Metal checks. Clardy and the defendant made the checks out to "Penny Braun" for approximately $200 each and the defendant signed the checks as the employee of Missoula Sheet Metal authorized to issue payroll checks. After using Penny Braun's identification cards to cash five checks at four different stores, Clardy and the defendant returned that evening to Spokane.

According to the defendant, he did not go to Missoula the night of March 6, 1981, but rather stayed in Spokane with a good friend, visited his sister in Spokane the next morning, and spent that day painting his apartment.

The defendant was arrested in Spokane, Washington, on April 21, 1981, and brought to trial in Missoula, Montana, on November 2, 1981. The defendant was charged with the burglary of Missoula Sheet Metal, forging the stolen checks, and solicitation for encouraging Cindy Clardy to deliver the forged checks, pursuant to sections 45-6-204, 45-6-325, and 45-4-101, MCA, respectively.

The defendant raises three issues on appeal:

1. Whether the evidence of the theft of Penny Braun's purse and the rental typewriter was evidence of "other crimes," and if so, whether it was properly admitted at trial according to Rule 404(b), M.R.Evid.?

2. Whether the defendant was denied his right to a speedy trial?

3. Whether the District Court erred by refusing the defendant's request that he interview two witnesses?

- 3 -

The District Court admitted the evidence of the stolen purse and typewriter on the grounds that this evidence was "inseparably related" to the accused crimes of burglary, forgery, and solicitation. The defendant claims on appeal that evidence of the stolen purse and typewriter constituted evidence of "other crimes" and as such the procedures mandated in State v. Just (1979), ____ Mont. ____, 602 P.2d 957, 36 St.Rep. 1649, should have been followed.

In State v. Trombley (1980), ____ Mont. ____, 620 P.2d 367, 37 St.Rep. 1871, we held that evidence of "defendant's simultaneous misconduct inseparably related to the alleged criminal act" was not evidence of other crimes and therefore, the procedural mandates of Just need not be followed. The principal question here is whether the thefts of the purse and typewriter are such "inseparably related" acts of misconduct.

In Trombley, credit cards were stolen at the same time a truck was stolen. The defendant was charged solely with the theft of the truck, but at trial evidence of the defendant's use of the stolen credit cards was also admitted. On appeal, the defense claimed it was error to use this evidence of other crimes without first following the procedural requirements of Just. We concluded that the evidence of the stolen credit cards was not evidence of "other crimes" and as such, the procedural guidelines of Just need not be followed.

Our reasoning in Trombley was based in part on our discussion of "other crimes" evidence in State v. Jackson (1979), 180 Mont. 195, 589 P.2d 1009. In Jackson, we affirmed the admission into evidence of items that were stolen at the same time and from the same person as the items which were the basis for the theft charge. Such evidence was

- 4 -

not considered "other crimes" evidence because it was not evidence of a "wholly independent" crime. (180 Mont. at 202, 589 P.2d at 1014.)

Here, the defendant contends that the acts of stealing Penny Braun's purse and not returning the rental typewriter are not simultaneous acts of "misconduct inseparably related to the alleged criminal act." The defendant contends that these acts are "wholly independent" of the act constituting burglary, forgery, and solicitation. Therefore, defendant contends, the evidence of the stolen purse and typewriter must be considered evidence of "other crimes."

Under Rule 404(b), M.R.Evid., evidence of other crimes, wrongs, or acts is admissible as proof of "preparation" or "plan." Here, the purse and typewriter were needed in order to carry out the forgery and bad checks scheme, and as such were part of the "preparation" for the crime charged. The inherent prejudice of this evidence is outweighed by its great probative value in showing how the defendant was able to commit the crimes charged. See Smith v. State (1972), 152 Ind.App. 654, 284 N.E.2d 522.

We hold that the provisions of Just need not be met in this case. The stealing of the purse, and the keeping of the rented typewriter were inseparably related to the common general scheme of the defendant to engage in burglary, forgery, and solicitation of crime. The other crimes evidence is explanatory of his method and purpose in committing the crimes charged against him.

Defendant Smith also claims prejudice because other incidents of criminal activity were imputed to him through testimony at trial. Penny Braun testified that rocks were thrown at her windshield and that Robin Smith communicated to

her threats upon her life. A motion for mistrial based on this evidence of "other crimes" was denied. Detective Dave Wiyrich, testified to the alleged offering of "hush money" by Smith to Penny Braun. He also described the search he conducted of Robin Smith's apartment as an "administrative search," implying that the defendant was a parolee and that the search was conducted by the parole department. A motion for mistrial based on this evidence was denied. Finally, Detective Wiyrich, in response to a question regarding the possible involvement of Robin Smith's brother, Tom, in this crime, indicated that Spokane authorities were also "familiar with Robin Smith." In response to additional questioning by defense counsel regarding Tom Smith's record, the prosecutor made an off-the-cuff remark that he would like to inquire of the detective about Robin Smith's record. Within a few seconds, the detective informed the jury that he did indeed have the records of both Robin and Tom Smith with him, holding up several computer sheets to the jury.

Robin Smith contends that these events, the interjection by the prosecutor and the unsolicited testimony regarding the defendant's criminal record by the detective were particularly prejudicial to the defendant. His motion for mistrial on this conduct was also denied by the District Court.

Robin Smith also charges that the prosecutor unfairly asked him whether he filed income tax returns or had federal taxes deducted from his check; that Tammy Craig testified that she saw Robin Smith throw a check protector into a river and that she had seen him break into places before the Missoula break-in.

The State answers the additional contentions as follows: Although Penny Braun testified that rocks were thrown at her windshield, there was no hint or testimony that they were thrown by Robin Smith; the threats that Penny Braun received are not specified, nor is there indication that the defendant made the threats; however, evidence of threats would be admissible to show consciousness of guilt under State v. Shaw (1982), ____ Mont. ___, 648 P.2d 287, 39 St.Rep. 1324; the offer of money to keep quiet is again admissible as evidence of defendant's consciousness of guilt; and "administrative search" does not imply parole; the police being "familiar with" the defendant and his brother does not necessarily mean a prior criminal record; the testimony of the officer that he had a copy of the defendant's criminal record was elicited by the defense over the objection of the prosecution, and is not a basis for an appeal.

We agree with the State's contentions with respect to the additional items of evidence that came up in the trial. We find no error therein which would serve to reverse defendant's conviction on those grounds. We do not condone the prosecutor's statement that he would like to inspect the criminal record of the defendant while the detective was on the stand, as the remark was overzealous. The error, however, was harmless.

On the second issue, the defendant contends that his case should be dismissed because his right to a speedy trial was violated.

Every defendant is guaranteed the right to a speedy trial U.S. Constitution Amendment V, § 2; Mont. Const., Art. II, § 24. Four factors must be considered in order to determine whether a defendant's right to a speedy trial has

Hon. John C. Sheehy
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana  59620

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

Date:

October 19, 1983

Re:

State v. Smith, No. 82-92, Oct. 6, 1983

Page 7, line 3 from bottom -- Amendment V, § 2 should read Amendment VI.



WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

been violated: (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of the right; and (4) prejudice of the defendant from the delay. Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The length of the delay has been considered the "triggering mechanism" in determining whether the right of a speedy trial has been violated. If the length of the delay is not presumptively prejudicial, there is no reason to consider the other factors. Barker, 407 U.S. at 530. See also State v. Fife (1981), ____ Mont. ____, 632 P.2d 712, 38 St.Rep. 1334.

For purposes of determining length of delay, the clock begins to run when the defendant is arrested or when the complaint is filed. State v. Larson (1981), ____ Mont. ____, 623 P.2d 954, 38 St.Rep. 213; State v. Freeman (1979), 183 Mont. 334, 599 P.2d 368.

In this case, the defendant was arrested on April 21, 1981. The Missoula authorities filed a complaint against him on May 7, 1981, and asked the defendant to waive extradition proceedings. On May 18, the defendant decided not to waive extradition and formal extradition procedures began. A governor's warrant was issued on June 15, 1981. On June 30, the defendant decided to waive formal extradition.

The defendant traveled to Missoula on July 2, had his initial appearance on July 6, an information was filed on July 22, and his arraignment was held on July 29. The information was amended August 12, an omnibus hearing was held September 1, trial was initially set for October 19, but was continued to November 2. Defendant was finally brought to trial 195 days after the defendant's arrest. In Fife, supra, we presumed prejudice to the defendant from a delay of 194 days; the delay was measured from the date the

remittitur was ordered, remanding the cause for a new trial and there was no plausible reason for the State's inaction.

Here, the defendant did not arrive in Montana and become available for trial until July 2, 1981. Extradition proceedings went on for nearly 60 days, from May 7 until July 2. While diligent prosecution includes a timely demand for extradition of a defendant, State v. Sterling (1979), 23 Wash.App. 171, 596 P.2d 1082, extradition proceedings are a sufficient reason for delay if the State has been diligent. See for example, Balla v. State (1976), 97 Idaho 378, 544 P.2d 1148, where the Court decided that extradition tolls the calculation of the length of the delay.

The State is, therefore, not responsible for the 60 days that expired while defendant pursued his right to require formal extradition. We cannot say the defendant's right to a speedy trial was prejudiced by the remaining delay of 135 days.

Defendant's last contention is that he was denied the right to assist in his own defense when he was not allowed personal interviews with two witnesses called by the State on rebuttal. While the District Court had denied the defendant personal interviews, defendant's counsel were allowed to interview the witnesses.

As a general rule, the State cannot deny defendant's counsel access to a material witness, State v. Gangner (1925), 73 Mont. 187, 235 P. 703. The United States Supreme Court has held that the Sixth Amendment right to counsel, includes the right of an accused to personally make his own defense. Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. Nevertheless, most courts agree that this Sixth Amendment guarantee does not mean that the

accused can make his own defense personally and have the assistance of counsel. See State v. Tait (1980), ____ Fla. ____, 387 S.2d 338 and cases cited therein. If a defendant is adequately represented by counsel, he does not have the constitutional right to also represent himself. In State v. Armstrong (1977), 172 Mont. 296, 562 P.2d 1129, we applied this general rule to hold that a defendant represented by counsel does not have the constitutional right to address a jury either personally or through a handwritten note. Likewise, a defendant adequately represented by counsel does not have the constitutional right to interview witnesses personally. See also State v. House (1978), 295 N.C. 189, 244 S.E.2d 654; and State v. Ames (1977), 222 Kan. 88, 563 P.2d 1034. Here, the defendant was adequately represented by counsel who were allowed to interview the witnesses. His contention, therefore, must fail.

The judgment of conviction of the defendant is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 10 -

Mr. Justice Daniel J. Shea, dissenting:

I would reverse the conviction and order a new trial. The prosecutor's ploy in getting the police officer to waive the defendant's criminal record in front of the jury was manifestly prejudicial and demands a new trial. I do not see how tactics such as this can be deemed harmless error.

                                        _Daniel J Shea_
                                        Justice