No. 83-317

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

TERRY LEE ROBBINS,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixth Judicial District,
In and for the County of Sweet Grass,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Terry Lee Robbins, pro se, Deer Lodge, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
G. Thomas Biglen, County Attorney, Big Timber,
Montana

Submitted on Briefs: June 13, 1985

Decided: September 23, 1985

Filed: SEP 23 1985

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal of a conviction from the District Court of the Sixth Judicial District, Sweetgrass County. Following a jury trail, Terry Lee Robbins was found guilty of two counts of burglary in violation of § 45-6-204, MCA, and one count of felony theft in violation of § 45-6-301, MCA. He was sentenced to ten years in the Montana State Prison under each of the burglary counts, to run consecutively, and to ten years under the felony theft count, to be served concurrently with the sentence for burglary. Defendant was designated a dangerous offender. We affirm.

Robbins and a companion, James Weaver, travelled together in a westerly direction across southern Montana in late July, 1982. They arrived in Big Timber the afternoon of August 3, 1982, and checked in as guests at the Grand Hotel. They were subsequently charged with burglarizing the game room in the hotel and a nearby sport shop in the early morning hours of August 4, 1982. The coin doors of various game machines in the hotel had been pried open and forty-seven pistols were missing from the sport shop.

The suspects were arrested by police in Twin Falls, Idaho, on August 6, 1982. Weaver pleaded guilty to the offenses charged. Robbins resisted extradition, but eventually was extradited to Montana and appeared in Sweet Grass County District Court September 20, 1982. The Honorable Jack Shanstrom, District Judge, appointed James Tulley defendant's counsel and a trial date was set. Tulley filed a motion for substitution of judge September 27, 1982. Consequently the trial date was vacated.

On September 30, 1982, Robbins moved pro se for dismissal of Tulley. In the meantime, Judge Shanstrom disqualified himself and Judge W. W. Lessley assumed jurisdiction over the cause. During the month of October Robbins filed numerous pro se motions, although at least one of those motions indicated he still considered Tulley to be acting as his counsel. The court acted on Robbins' motion for dismissal of counsel November 8, 1982. Prior to Tulley's dismissal however, Robbins pleaded not guilty to an amended information.

On November 15, 1982, the court ordered Robbins transferred to the custody of Missoula County authorities to answer theft charges against him there. Counsel was appointed for Robbins in Missoula, who negotiated with the Sweet Grass County Attorney regarding a plea bargain on the Missoula County charges. During the time Robbins was in custody in Missoula County, Judge Lessley retired and the Honorable Thomas Olson, newly elected District Judge, assumed his duties January 1, 1983. On January 6, 1983, Judge Olson ordered Robbins returned from Missoula County to Big Timber for a hearing on pending motions. Mr. Karl Knuchel assumed the duties of counsel for Robbins January 7, 1983. A trial date was set for February 23, 1983. Robbins, through his counsel, filed a motion to dismiss for lack of a speedy trial, which the court dismissed.

Robbins raises three issues on appeal:

(1) Whether he was denied his constitutional right to counsel.

(2) Whether he received effective assistance of counsel.

3

(3) Whether he was afforded his constitutional right to a speedy trial.

Robbins argues he was denied his constitutional right to counsel. He contends no counsel was appointed for him prior to his arraignment November 8, 1982, and therefore he was denied his right to assistance of counsel during a critical stage of the proceedings against him. The record shows this is not the case. Mr. James Tulley was appointed counsel September 20, 1982. Although Robbins filed a motion to dismiss counsel on September 30, 1982, it was not acted on until November 8, 1982. Further a subsequent motion filed by Robbins October 6, 1982, stated he was represented by Mr. Tulley. Mr. Tulley was present with Robbins at his arraignment November 8. Robbins acknowledged he was capable of entering a plea and did enter a plea of not guilty. Tulley registered no objection, with the understanding the court allow Robbins to file whatever subsequent motions might be necessary. Even if Mr. Tulley had been dismissed before Robbins entered a plea, the record indicates Robbins made an intelligent and informed plea. In any event, no prejudice resulted from the claimed absence of counsel. Robbins pled not guilty to all of the charges and did not forfeit any of his rights. In any critical stage of the proceedings a defendant may question failure to provide counsel only where potential substantial prejudice inheres in the absence of counsel. Cadena v. Estelle (5th. Cir. 1980), 611 F.2d 1385. See also United States v. Lacy (5th Cir. 1971), 446 F.2d 511. A critical stage is any step of the proceeding where there is potential substantial prejudice to the defendant. United State v. Wade (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; State v. Dieziger (Mont. 1982), 650 P.2d 800, 39

4

St.Rep. 1734. Robbins has not shown, nor could he show he was prejudiced in any way at the time of his arraignment November 8.

Counsel was not appointed for Robbins before September 20 because he was in Idaho fighting extradition to Montana. Counsel was appointed for him at his first court appearance September 20. Robbins claimed a conflict of interest on the part of counsel and on September 30 filed a motion for his dismissal. The record shows counsel had done a "substantial amount" of investigative work prior to his dismissal November 8. In other words, Robbins was represented by counsel from September 20 until November 8. The court did not find a conflict of interest, but dismissed counsel because Robbins asked that he be dismissed. On November 15, Robbins was transferred to Missoula County where he was represented by court appointed counsel on the theft charges pending there. This counsel was acting on Robbins' behalf on the Sweet Grass County charges by attempting to have the charges dismissed as part of a plea bargain on the Missoula County charges.

When Robbins was returned from Missoula, Karl Knuchel was appointed counsel and immediately filed a motion for discovery. Mr. Knuchel had six and one-half weeks to prepare for the trial scheduled to begin February 23. Adequate time to prepare for trial is essential to the Sixth Amendment guarantee of effective representation of counsel. There is nothing to indicate he had insufficient time adequately to prepare. Had counsel been appointed earlier it would have been difficult to prepare for trial with Robbins in Missoula. Finally, there is no evidence Robbins was prejudiced by the late appointment of counsel.

5

The delay in appointment of Mr. Knuchel was not intentional. After Mr. Tulley had been dismissed, Robbins was transferred to Missoula County. Judge Lessley, who had assumed jurisdiction, retired and Judge Olson assumed jurisdiction over the case. Mr. Knuchel began working on the case within a day or two after Robbins returned from Missoula.

It is clear that Robbins was afforded his constitutional rights to counsel at all critical stages of the proceedings against him and any claimed denial of counsel for any period of time did not result in prejudice to him. Finally, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded [on appeal]," § 46-20-702, MCA. Robbins has failed to show violation of his right to counsel during the proceedings against him and therefore his claim is denied.

Robbins argues he did not have effective assistance of counsel. This contention, however, is contradicted by the record. The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and by Art. II, § 24 of the Montana Constitution. The court has interpreted these guarantees to mean effective assistance of counsel, State v. Bubnash (1961), 139 Mont. 517, 366 P.2d 155, and has adopted the "reasonably effective assistance" test stated as follows: "Persons accused of crime are entitled to the effective assistance of counsel acting within the range of competence demanded of attorneys in criminal cases." State v. Rose (1980), 187 Mont. 74, 86, 608 P.2d 1074, 1081. Challenging the affective assistance of counsel places a burden on a defendant to show "that the error allegedly committed by a lawyer resulted in prejudice to him and

stemmed from neglect or ignorance rather than from informed professional deliberation." State v. Morigeau (Mont. 1982), 656 P.2d 185, 189, 39 St.Rep. 2311, 2317.

Robbins' specific allegations of various failures of appointed counsel simply do not withstand scrutiny. There is no evidence in the record counsel refused to call defense witnesses. There is no evidence that even had certain witnesses been called they would have been more than "after the fact" witnesses. That is, the relevance of their testimony as to facts surrounding the commission of the crime would have been minimal at best. The record does not show appointed counsel opened the door to evidence of other crimes. Nor does the record support the need for a change of venue. Defense counsel argued lack of corroboration of accomplice Weaver's testimony, and he moved for a directed verdict for lack of corroboration of accomplice testimony. The record shows corroborative evidence was presented. Robbins' charge that counsel failed to move for suppression of certain evidence borders on the ridiculous. The primary evidence was the stolen guns, which were seized pursuant to a properly issued search warrant. Robbins actually volunteered to arresting officers that he had a gun on his person. There were no irregularities in Robbins' arrest. In fact, defense counsel's decision not to move to suppress is indicative of sound professional judgment, not ineffective assistance.

Allegations of ineffective assistance of counsel "must be grounded on fact which appear in or are easily deduced from the record and which go beyond . . . mere conclusory allegations. There must be a showing of actual ineffectiveness on the part of counsel." State v. Lewis

(1978), 177 Mont. 474, 485, 582 P.2d 346, 353. See also DiGiallonardo v. Betzer (1973), 163 Mont. 104, 515 P.2d 705.

Robbins did not demonstrate the alleged errors and omissions of his counsel resulted in prejudice to him. He is unable to support his allegations with specific factual instances. Rather, the allegations reveal his counsel exercised professional judgment of one who zealously defended his client. Nor did Robbins meet the Morigeau standard, supra, or the reasonably effective assistance test.

The United States Supreme Court recently addressed the issue of ineffective assistance of counsel, applying an objective standard of reasonableness.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Stickland v. Washington (1985), ____ U.S. ____, at ____, 104 S.Ct. 2052, at 2064, 80 L.Ed.2d 674, at 693.

Robbins has failed to demonstrate his counsel's performance was so seriously deficient to conclude he was not functioning as the counsel guaranteed by the Sixth Amendment. He has failed to show his counsel's performance prejudiced his defense to the extent he was denied a fair trial. To show prejudice:

8

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of a proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Robbins has not done this. He has not shown the outcome of his trial would be different had counsel performed differently. The test of effective assistance is not acquittal.

Finally, Robbins contends he was not afforded his constitutional right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and Art. II, § 24 of the Montana Constitution. In analyzing the validity of a claim of lack of a speedy trial, the Court investigates and balances four factors set forth by the United States Supreme Court in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. Length of delay is of primary importance. Unless it is sufficiently long to be deemed presumptively prejudicial to the defendant, there is no need to consider the other factors. What length will be deemed presumptively prejudicial depends on the facts in each individual case. State v. Worden (1980), 188 Mont. 94, 611 P.2d 185.

The Sixth Amendment has no application until the putative defendant in some way becomes an accused. Until a citizen becomes an accused he suffers no restraints on his liberty and is not the subject of public accusation. United States v. Marion (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. Robbins argues that the time should begin to run when the arrest was made, August 6, 1982. In State v.

9

Smith (Mont. 1983), 670 P.2d 96, 100, 40 St.Rep. 1533, 1537, we said the clock begins to run when the defendant is arrested or when the complaint is filed. This is consistent with State v. Larson (Mont. 1981), 623 P.2d 954, 957-58, 38 St.Rep. 213, 215, where we said once a person is accused and subject to criminal prosecution that accusation may be by arrest, the filing of a complaint, or by indictment or information. It is at this time the person is afforded the constitutional protection of a speedy trial. See also State v. Ackley (Mont. 1982), 653 P.2d 851, 39 St.Rep. 2091.

The real issue, however, is whether Robbins or the State should be charged with the time Robbins was in Idaho resisting extradition to Montana. Robbins argues this time should be weighed against the State because he was being held on a Montana warrant and therefore was subject to Montana's jurisdiction. The State argues this time should not be weighed against the State because Robbins was not subject to Montana's in personam jurisdiction. We agree with the State. During the forty-five days from Robbins' arrest August 6 in Twin Falls, Idaho, until his appearance in court in Big Timber, Montana, he was resisting extradition to Montana. That time is attributable to him and he therefore waives any right to complain of lack of a speedy trial. ". . . [D]elay[s] in bringing a defendant to trial caused or consented to by defendant are considered to constitute a waiver of the right to be tried within the time fixed by statute or required by the constitution." State v. Talmadge (Idaho 1983), 658 P.2d 920, 924. See also State v. Balla (Idaho 1976), 544 P.2d 1148, where the Idaho court decided extradition tolls the calculation of the length of the delay.

10

Previous holdings on this issue are in conflict. In State v. Ackley, supra, even though the defendant waived extradition, the time between his arrest in Oregon and his initial appearance in Missoula County, Montana, weighed against him. In State v. Smith, supra, however, where defendant resisted extradition, proceedings which continued for nearly sixty days also weighed against the defendant. In State v. Armstrong (Mont. 1980), 616 P.2d 341, 37 St.Rep. 1563, the Court is clear, when computing length of delay it does not include that time in which the district court does not have jurisdiction to engage in proceedings leading to a trial.

Diligent prosecution includes a timely demand for extradition of a defendant, and extradition proceedings are sufficient reason for delay if the State has been diligent. State v. Smith, supra. The right of a defendant to resist formal extradition, however, cannot be charged to the State when computing the length of delay for speedy trial, if the State is acting in good faith. Balla, supra. The right of a defendant to a speedy trial commences when he becomes an accused. Marion, Smith, Larson, and Ackley, supra. The court then must acquire in personam jurisdiction over the accused to engage in proceedings leading to a trial. If the accused is out of state, the State must act diligently and in good faith to acquire jurisdiction. At the same time, the accused has a right to resist extradition. When he does so, however, he loses those days he resists from computation of length of delay. When an accused does not resist, those days should not be weighed against him when the State is acting diligently and in good faith. For this reason, inclusion of those days in computing the length of delay, as was done in

11

Ackely, will no longer be the rule. Only those days an accused actively resists extradition will be included. Days in which the court does not or cannot, through the State's efforts, acquire jurisdiction over an accused will be counted against the accused and will not be included in computing the length of delay.

When applying the Barker test, it is first necessary to consider whether the delay which occurred is presumptively prejudicial to Robbins. 201 days elapsed between the time Robbins was arrested August 6, 1982 and the time he was brought to trial, February 23, 1983. During forty-five of these days Robbins was in Idaho resisting extradition. As noted earlier these days cannot be weighed against the State, and will not be included in computing the delay. Therefore, 156 days elapsed from the time of Robbins' initial court appearance in Big Timber September 20, 1982, until his trial began February 23, 1983. During this period there were further delays, some of which were caused by Robbins. On September 27, he disqualified Judge Shanstrom, which caused a delay. On September 30, he attempted to disqualify his counsel and began filing motions both as though he were representing himself and as though he were represented by counsel. Some of these motions were responded to as though he were representing himself. On November 15 he was transferred to Missoula County to answer charges there, resulting in a further delay of fifty-two days. This delay should not weigh against the State, consistent with our holding in Armstrong. Even if the entire delay between September 27 and November 15 does not weigh against Robbins, there is a delay of only 104 days, which is well within the Court's guidelines for acceptable length of delay, and is not

12

presumptively prejudicial to Robbins. Therefore the other three factors of the Barker test need not be considered. Robbins cannot complain he was not granted a speedy trial. The conviction of the District Court is affirmed.


_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13