No. 87-155

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

       Plaintiff and Appellant,

  -vs-,

KENNETH N. MORAN,

       Defendant and Respondent.


APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Honorable Mike Greely, Attorney General, Helena, Montana
        Robert F. W. Smith, Assistant Attorney General
        Mike Salvagni, County Attorney, Bozeman, Montana
        Marty Lambert, Deputy County Attorney

    For Respondent:

        LeAnne Schraudner, Lilly, Andriolo and Schraudner;
        Bozeman, Montana
        Richard Nellen, Bozeman, Montana


                    Submitted: January 15, 1988

                    Decided: April 21, 1988

Filed: APR 2 1 1988

*Ethel M. Harrison*

_____
              Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The State of Montana appeals an order granting dismissal of four criminal charges against the defendant in the Eighteenth Judicial District, Gallatin County. We reverse and remand for trial.

The issue is whether the District Court committed error by granting defendant's motion to dismiss.

In May, 1986, Mr. Moran was charged with the crime of forgery by accountability or in the alternative, conspiracy to commit forgery. Later that month he was charged with two counts of witness tampering. The two cases were consolidated by the District Court, and trial began on September 22, 1986. The jury was empaneled and sworn on that day, and the prosecution presented six witnesses. This was defense counsel's first felony criminal trial before a jury. On the morning of the second day of trial, before any more testimony was offered, the trial judge on his own motion declared a mistrial. The basis for this action was the court's belief that defendant was being denied effective assistance of counsel and that manifest necessity required mistrial. The defense raised no objection to mistrial, although the State did object.

The court scheduled the matter for retrial in November 1986. As the parties prepared for retrial, the original trial judge was substituted. The substitute judge then ordered briefs on the issue of retrial and double jeopardy, pursuant to defendant's motion to dismiss. Subsequently, this substitute judge granted the motion.

Did the District Court commit error by granting defendant's motion to dismiss?

We accord great deference to the trial judge's findings and conclusions when the judge heard the witnesses and

observed their demeanor. Similarly, we accord deference to the trial judge's judgment as to competence of counsel when the judge heard and observed his performance as criminal defense counsel, both in chambers and in the courtroom during voir dire and trial. The substitute judge likewise should accord deference to the original trial judge on these matters. The substitute judge in effect reversed the trial judge, having reviewed only seven pages of a trial transcript which when complete contains 221 pages of voir dire, testimony, and in-chambers discussions. For these reasons, the substitute judge's order of dismissal will not receive the same deference as the action by the trial judge.

We now consider whether the trial judge abused his discretion in finding manifest necessity for mistrial. The trial judge's action was motivated by his concern for defendant's constitutional right to effective assistance of counsel. Because the decision to order mistrial was made to protect defendant's constitutional interests, that decision will receive a high degree of deference on review. See United States v. Sanders (9th Cir. 1979), 591 F.2d 1293, 1297 (stating "A trial judge's decision to declare a mistrial because of possible juror bias is also deserving of great deference."); see also Wright v. United States (D.C. 1976), 365 A.2d 365. The defendant's interest in effective assistance of counsel, however, must be considered in light of his Fifth Amendment right not to be placed twice in jeopardy. Jeopardy attaches when the jury is empaneled and sworn. State v. Carney (Mont. 1986), 714 P.2d 532, 535, 43 St.Rep. 54, 58. In this case, jeopardy had attached. The constitutional protection against double jeopardy bars a second criminal trial "unless there was a 'manifest necessity' to terminate the trial or defendant acquiesced in the termination." Carney, 714 P.2d at 535.

3

If the trial judge exercised sound discretion, if he acted rationally and responsibly, his order of mistrial will be affirmed. Arizona v. Washington (1978), 434 U.S. 497, 514, 98 S.Ct. 824, 54 L.Ed.2d 717. Upon review, "[t]he record must support the explicit or implicit finding of manifest necessity." United States v. Jarvis (9th Cir. 1986), 792 F.2d 767, 769. Our review of the record convinces us that the trial judge acted responsibly, exercising sound discretion when he found manifest necessity for a mistrial.

The trial judge concluded that counsel was too inexperienced to defend a major felony charge involving conspiracy and accountability theories. One example was the failure of defense counsel to object to the admission of State's exhibit 38 which was the foundation for an alleged admission or confession of the defendant. Exhibit 38 was offered in evidence through a deputy sheriff. Exhibit 38 was a "rights" card, which contained a Miranda statement of the defendant's right against self-incrimination and his right to assistance of counsel. This particular form provided a line for the defendant's signature if he made a signed waiver. The defendant here had not signed that line. The form also provided a space where the deputy could write down the answer of the defendant when he was asked "Do you want to use any of these rights before we ask you questions?" The officer testified that he had not filled out that blank and that he could not explain why he had failed to get either the defendant's signature for a written waiver or why he failed to record an oral waiver. Defense counsel did not make any objection at that point. Notwithstanding the absence of an objection, the trial court called counsel into chambers and afforded defense counsel an opportunity to object to the admission of evidence. The court inquired as to the testimony which was going to come in and was advised as to the nature of the

4

confession type evidence. At that point, even though counsel for the defense had still failed to make any objection, the court refused the testimony on the grounds that the officer failed to properly obtain an oral waiver of rights.

The following day, before the commencement of trial, the court made the following ruling:

> Let the record show we're outside the presence of the jury. After some agonizing thought on this matter, gentlemen -- let the record show the Defendant is present, represented by [counsel]. Mr. Lambert is present. I am regretfully concluding that [defense counsel] does not have the sufficient experience to try this case, and that is no reflection on you . . . . I was in a similar situation when I was in your shoes, but the constitution requires that the Defendant be guaranteed effective assistance of counsel, and I'm going to conclude that he does not have that, and I'm going to grant on my own motion a mistrial and I'm going to find that manifest necessity dictates that matter be retried and that the bars of double jeopardy do not prevent a retrial.

Counsel for the defendant argues that the record reflects that the defendant voluntarily and intelligently waived his rights prior to the confession. They cite State v. Blakney (1982), 641 P.2d 1045, 197 Mont. 131, where this Court pointed out that the existence of a valid waiver depends in each case upon the particular facts and circumstances, including the background, experience and conduct of the accused and other appropriate considerations including the age, education and intelligence of the accused and his capacity to understand the warnings and the consequences of waiving those rights. In addition this Court pointed out that a valid waiver must include an actual relinquishment of the benefits as evidenced by the actions or statements of the accused. The record contains substantial evidence to support the conclusion of the District Court that the State had

5

failed to properly obtain an oral waiver of rights so that the defendant's admission or confession was not admissible in evidence.

We conclude that the trial judge acted rationally, carefully considering the problems of the difficult situation with which he was confronted. There is substantial evidence from which to conclude that counsel's performance had been ineffective. There is substantial evidence to support the conclusion that highly prejudicial evidence would have been admitted for the lack of a proper objection if the trial judge had not stepped in. We conclude that the trial court exercised sound discretion.

Because mistrial is an extreme remedy, a trial judge should carefully consider alternatives. No reasonable alternatives were suggested in this case. A continuance until a new defense counsel was familiarized with the case would have resulted in an unnecessary delay, Cautionary instructions would not have been adequate. No reasonable alternatives were presented.

Defense counsel argues that the trial court should have considered the tactics of counsel for the defendant. Having concluded that the failure to object to the rights card and the admission testimony was highly prejudicial to the defendant, there remains no question of trial tactics. Counsel failed to object to the admission of damaging evidence in the absence of a proper foundation. We conclude that the trial judge was in the best position to judge the performance of counsel and the effect of the evidence, and the record supports his judgment. By this opinion we do not intend a criticism of the defense counsel. The record demonstrates that he applied himself diligently in the performance of his duties, but that he had insufficient experience to recognize the extent of his duties.

The argument is made that we should apply the two-pronged <u>Strickland</u> test to the trial court's determination. The second prong of that test requires the defendant to show that the deficient performance prejudiced the defense and that the errors were so serious as to deprive the defendant of a fair trial. That test was established for the review of actions taken in the course of a completed trial. There is no way of showing in the present case whether the conduct deprived the defendant of a fair trial because a mistrial was declared. We conclude that the <u>Strickland</u> test is not applicable. As previously stated, we conclude that the standard upon review of a decision to order mistrial is whether the trial court exercised sound discretion.

We conclude that the trial judge exercised sound discretion when he found manifest necessity for mistrial. We also conclude that there was no basis for reversal by the subsequent trial judge who granted the dismissal of all charges against the defendant.

We reverse the order dismissing the charges on grounds of double jeopardy and remand the case for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

7

Mr. Justice William E. Hunt, Sr., dissenting:


The majority today provides the means by which the defendant may be tried twice for the same offense. Accordingly, I dissent.

In its opinion, the majority holds that the substitute judge should not be accorded the same deference upon review as is normally accorded trial courts because it reviewed only a partial transcript of the proceedings. It then proceeded to discuss only one incident that was an "example" of counsel's inexperience, namely failing to object to an improperly filled out rights cards. It was the partial transcript of this incident that the substitute judge reviewed along with the parties' briefs and District Court record, and it was this incident which the substitute judge found was not manifest necessity for a mistrial. Although the majority has reviewed the whole record, it does not point to any other example of "ineffectiveness" and confines itself to a discussion of the very incident the substitute judge reviewed.

It is clear to me that the substitute judge should have been given more deference by the majority than he was. Declaring a mistrial is an extreme measure which should be used with great caution. State v. Carney (Mont. 1986), 714 P.2d 532, 535, 43 St.Rep. 54, 59. Reviewing courts must be satisfied that the trial court exercised sound discretion in declaring a mistrial. Arizona v. Washington (1978), 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717, 733. The majority has discussed only one instance of defense counsel's possible "inadequacy." The trial court cited no particular incident that prompted its action, nor has the majority explained any other event that showed inadequate

representation other than the one also reviewed by the substitute judge. It seems to me that the substitute judge balanced the defendant's constitutional interest with the public's interest in prosecution and, not surprisingly, came out in favor of the Constitution.

Montana has adopted and refined the two-pronged test for ineffective assistance of counsel set out by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, State v. Robbins (Mont. 1985), 708 P.2d 227, 42 St.Rep. 1440. The Strickland test is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687.

In Robbins, this Court stated that a counsel's assistance is constitutionally effective if he or she acts "'within the range of competence demanded of attorneys in criminal cases.'" Robbins, 708 P.2d at 231, quoting State v. Rose (1980), 187 Mont. 74, 86, 608 P.2d 1074, 1081. If an attorney's conduct fails this first step them it must be shown that the error resulted in prejudice and "'stemmed from neglect or ignorance rather than from informed professional deliberation.'" Robbins, 708 P.2d at 231, quoting State v. Morigeau (1982), 202 Mont. 36, 44, 656 P.2d 185, 189. Robbins concerned the defendant's claim that his attorney

had, inter alia, failed to make a motion to suppress some properly seized evidence, namely stolen guns. This Court discovered nothing in the record that supported any of the defendant's claims.

In fact, the failure to make the above motion was sound professional judgment considering there were no irregularities in Robbins' arrest or in the seizure of the evidence. Robbins, 708 P.2d at 232. Of particular interest is the recent decision of State v. Probert (Mont. 1986), 719 P.2d 783, 43 St.Rep. 988, in which the court held that although counsel's failure to object to hearsay was error, it was not prejudicial. The Court also recognized that "[t]here is a difference between ineffective assistance and counsel's tactical decisions in defense of a case." Probert, 719 P.2d at 787.

I disagree with the majority's assertion that the Strickland test is not applicable to the case at hand because it was not a completed trial. The United States Supreme Court does not limit its decision in such a manner. In fact, Strickland itself arose not out of a trial proper but out of a post-trial capital hearing proceeding which the court claimed was "adversarial" enough in nature to warrant application of the test. The proceeding we are concerned with was an actual trial, although an uncompleted one. Perhaps the full Strickland test is not appropriate in proceedings terminated sua sponte by the presiding judge but its general thrust is, especially when the trial is interrupted because the court feels ineffective assistance is taking place. If we do not measure the court's soundness of decision in a manner at least similar to Strickland, how else are we to review the decision?

Defendant argues that what Judge Olson perceived as ineffective assistance of counsel was in fact a tactical plan

designed to promote the eventual impeachment of the State's witnesses. Moran's counsel made many appropriate motions and objections before and after trial. There appears to be only one place during the trial proceedings where Judge Olson was concerned with defense counsel's conduct. This instance was thoroughly examined by the substitute judge and found not to rise to the level of ineffective assistance of counsel. This conclusion deserves every deference normally accorded trial court decisions.

_____
Justice

Mr. Justice John C. Sheehy, concurring in the foregoing dissent.

_____
Justice

- 11 -