NO.   94-609

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JADE DEE ANDERSON,

Defendant and Appellant.

FILED

JUL 18 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
               In and for the County of Silver Bow,
               The Honorable Mark P. Sullivan, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Jade Dee Anderson, Pro Se, Deer Lodge, Montana

        For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
        Micheal S. Wellenstein, Assistant Attorney
        General, Helena, Montana

        Robert M. McCarthy, Silver Bow County Attorney,
        Brad Newman, Deputy County Attorney,
        Butte, Montana

Submitted on Briefs:   May 19, 1995

Decided:   July 18, 1995

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On October 12, 1993, the defendant, Jade Dee Anderson, was charged by information in the District Court for the Second Judicial District in Silver Bow County with felony assault in violation of § 45-5-202(2)(a), MCA (1991). Anderson pled not guilty at his arraignment, but later changed his plea to guilty and was sentenced by the District Court. After the Sentence Review Division of the Montana Supreme Court upheld Anderson's sentence, he filed a petition for post-conviction relief which, after an evidentiary hearing, was denied by the District Court. Anderson appeals from the District Court's denial of his petition for post-conviction relief. We affirm the District Court's order in part and remand for further proceedings.

We restate the issues raised on appeal as follows:

1. Did the District Court have authority to accept Anderson's guilty plea?

2. Was Anderson entitled to withdraw his plea pursuant to § 46-12-211, MCA?

3. Was Anderson denied effective assistance of counsel?

## FACTUAL BACKGROUND

Anderson was charged by information with felony assault based on the allegation that he stabbed **a victim** during a fight outside a bar in Butte, Montana. At his initial arraignment, Anderson pled not guilty. Following arraignment, Anderson and the State arrived at a plea agreement pursuant to which the State recommended that Anderson be sentenced to the Montana Department of Corrections and

Human Services for five years for the assault charge, and a consecutive two years for use of a dangerous weapon. By its express terms, the agreement was not binding on the court.

At the change of plea hearing, the court asked Anderson if he wanted to change his plea to guilty; Anderson responded that he did, and that he understood that the court was not bound by the agreement. The District Court informed Anderson of the maximum penalty for felony assault, and informed him that he could receive an additional two to ten years for using a dangerous weapon, which he could be ordered to serve consecutive to the first sentence. Anderson acknowledged that he understood this. The District Court mentioned that a dangerous offender designation could affect parole; Anderson's attorney responded that he had already explained this to his client. The court accepted the guilty plea and ordered a presentence investigation before it imposed a sentence.

On February 10, 1994, the District Court held a sentencing hearing. At the sentencing hearing, the court asked Anderson if his guilty plea was entered voluntarily; Anderson responded that it had been. Contrary to the agreement, the court sentenced Anderson to the Montana Department of Corrections for ten years for felony assault, six consecutive years for use of a dangerous weapon, and designated Anderson a dangerous offender pursuant to § 46-18-404, MCA.

Anderson did not appeal his sentence. Following the Sentence Review Division's refusal to modify his sentence, Anderson filed a petition for post-conviction relief in the District Court.

3

At a hearing to determine the merits of his petition, Anderson stated that he would not have pled guilty if he had understood the waiver of rights form that he signed. However, he acknowledged that he had not requested his attorney to appeal his conviction, and agreed that after he was sentenced he authorized his family to pick up his file so he could talk to another attorney.

Because Anderson alleged that he had received ineffective assistance of counsel, the attorney-client privilege was waived and his attorney, Daniel Sweeney, was allowed to testify. Sweeney testified that he advised Anderson of his constitutional rights before the change of plea hearing, and also advised Anderson that the plea agreement was not binding on the court. He stated that Anderson told him he understood the waiver of rights form and that Anderson did not request a trial after the court rejected the State's recommended sentence. Sweeney added that, following sentencing, he discussed Anderson's options, including an appeal, but that by February 24, 1993, Anderson requested that he turn over his file, and that he complied with that request.

On November 10, 1994, the District Court entered its findings of fact, conclusions of law, and order which denied Anderson's petition for post-conviction relief.

ISSUE 1

Did the District Court have authority to accept Anderson's guilty plea?

"The standard of review for a denial of a petition for post-conviction relief is whether substantial evidence supports the

4

findings and conclusions of the district court." *State v. Sheppard* (Mont. 1995), 890 P.2d 754, 757, 52 St. Rep. 106, 108 (citing *State v. Barrack* (1994), *267* Mont. 154, 159, 882 P.2d 1028, 1031).

Anderson contends that the District Court lacked authority to accept his guilty plea because it failed to inform him of the maximum penalties provided by law as required by §§ 46-16-105 and 46-12-210, MCA. He states that he was not notified of the effect of the dangerous offender designation until sentencing, and should have been notified before he changed his plea. Therefore, he contends that his plea was not voluntary. He claims that the District Court had an obligation to advise him personally of the possible effect of being designated a dangerous offender

Section 46-16-105(1), MCA, provides:

Before or during trial, a plea of guilty may be accepted when:
(a) the defendant enters a plea of guilty in open court; and
(b) the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea.

Section 46-12-210(1), MCA, provides in part that:

Before accepting a plea of guilty, the court shall determine that the defendant understands the following:
(a) (i) the nature of the charge for which the plea is offered;
(ii) the mandatory minimum penalty provided by law, if any;
(iii) the maximum penalty provided by law, including the effect of any penalty enhancement provision or special parole restriction . .

A guilty plea must be a voluntary, knowing, and intelligent choice among the alternatives available to a defendant. *State v. Radi*

(1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206 (citing *North Carolina v. Alford* (1970), *400 U.S. 25,* 91 S. Ct. 160, 27 L. Ed. 2d 162).

The transcript from the change of plea hearing illustrates that the District Court Judge informed Anderson of the maximum penalty for the assault charge and informed him that he may receive an additional two to ten years for using a dangerous weapon, which he could be ordered to serve consecutively. Anderson stated that he understood this. In addition, the District Court mentioned that the dangerous offender designation would affect parole and Anderson's attorney acknowledged that he had already explained this to him.

The court was only required to determine that Anderson understood the consequences of his plea, and toward that end, was entitled to rely on the statements of his counsel which were made in his presence. Therefore, we conclude that the District Court complied with the requirements of §§ 46-16-105 and 46-12-210, MCA, and had the authority to accept Anderson's voluntary plea.

<u>ISSUE 2</u>

Was Anderson entitled to withdraw his plea pursuant to § 46-12-211, MCA?

Anderson contends that he was entitled to withdraw his guilty plea after the District Court rejected the State's sentence recommendation because his plea agreement was pursuant to § 46-12-211(1)(b), MCA.

Section 46-12-211, MCA, provides procedural guidelines for plea agreements. It states, in relevant part, that:

(1) The prosecutor and the attorney for the defendant, or the defendant when acting pro se, may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty to a charged offense or to a lesser or related offense, the prosecutor will do any of the following:
 (a) move for dismissal of other charges;
 (b) agree that a specific sentence is the appropriate disposition of the case; or
 (c) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that the recommendation or request may not be binding upon the court.
 (2) If a plea agreement has been reached by the parties, the court shall, on the record, require a disclosure of the agreement in open court or, on a showing of good cause in camera, at the time the plea is offered. If the agreement is of the type specified in subsection (1)(a) or (1)(b), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. <u>If the agreement is of the type specified in subsection (1)(c), the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.</u>
. . .
 (4) If the court rejects a plea agreement of the type specified in subsection (1)(a) or (1)(b), the court shall, on the record, inform the parties of this fact and advise the defendant that the court is not bound by the plea agreement, afford the defendant an opportunity to withdraw the plea, and advise the defendant that if the defendant persists in the guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(Emphasis added.)

Anderson asserts that the District Court erred when it did not allow him to withdraw his guilty plea because he did not believe it was a paragraph (1)(c) agreement. He also claims that it could not have been a paragraph (1)(c) type of agreement because the court

7

did not inform him that if it did not accept the agreement he could not withdraw his plea. The State concedes that the District Court did not advise Anderson that he would not be allowed to withdraw his plea.

The record does not support Anderson's contentions. At the change of plea hearing the court asked the State whether the agreement was a (1)(b) or (1)(c) agreement. The State responded that the agreement was not binding. The court clarified that it was then pursuant to paragraph (1)(c), and asked Anderson's counsel if he understood. Anderson's counsel responded that he did and that he had explained the implications of a paragraph (1)(c) agreement to Anderson and informed him of the consequences of changing his plea to guilty. There is substantial evidence in the record to support the District Court's finding that the plea agreement was made pursuant to § 46-12-211(1)(c), MCA, and therefore, that the District Court was not required to allow Anderson to withdraw his plea pursuant to § 46-12-211(4), MCA. We conclude that the District Court did not err when it refused to allow Anderson to withdraw his plea pursuant to § 46-12-211(1)(b) and -211(4), MCA.

ISSUE 3

Was Anderson denied effective assistance of counsel?

Anderson contends that Sweeney's failure to file a notice of appeal constituted ineffective assistance of counsel because he did not waive a direct appeal.

8

The State counters that Sweeney did not have a duty to advise Anderson of a right to appeal under all circumstances, and that if he did have a duty in this case, the record indicates that he fully advised Anderson of his appellate rights.

This Court has followed the two-part test set forth in *Strickland v. Washington* (*1984*), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, for resolving ineffective assistance of counsel claims. *State v. Robbins* (1985), 218 Mont. 107, 114, 708 P.2d 227, 232. A defendant must first establish that counsel did not provide assistance within the range of competence demanded of attorneys in criminal cases. *State v. Coates* (1990), 241 Mont. 331, 337, 786 P.2d 1182, 1185. Second, a defendant must show that a deficient performance was so prejudicial that it denied the defendant a fair trial. *Strickland*, 466 U.S. at 687. In this case, which did not involve a trial, we must determine whether, but for counsel's advice, Anderson would have successfully appealed his sentence.

The first inquiry, then, is whether professional competence requires advising an unsuccessful defendant of his right to appeal in every case. Several courts have held that an attorney has no such duty. *Laycock v. New Mexico* (10th Cir. 1989), 880 F.2d 1184, 1187-88; *Marrow v. United States* (9th Cir. 1985), 772 F.2d 525, 527-28; *Carey v. Leverette* (4th Cir. 1979), 605 F.2d 745, 746, *cert. denied* (1979), 444 U.S. 983.

In Marrow, the Ninth Circuit held that counsel has an obligation to advise a defendant about the right to appeal after a guilty plea "when the defendant inquires about the appeal rights or when there are circumstances that indicate that defendant may benefit from receiving such advice." *Marrow*, 772 F.2d at 528.

That court explained that:

> [I]f there is a claim of error in connection with the plea proceeding that would constitute grounds for setting aside the plea, and if counsel either knows or should have learned of his client's claim or of the relevant facts giving rise to that **claim, counsel** has a duty to advise his client of the right to appeal the conviction.

*Marrow*, 772 F.2d at 529.

In this case, the District Court failed to advise Anderson that because his plea was entered pursuant to § 46-12-211(1)(c), MCA, it could not be withdrawn, even if the District Court chose to ignore the State's sentencing recommendation. That omission was contrary to the requirement of § 46-12-211(2), MCA, and if Anderson's substantial rights were affected thereby, could have served as the basis for setting aside the plea and sentence on appeal. *See United States v. Kennel* (9th Cir. 1994), 15 F.3d 134, 138; *United States v. Graibe* (9th Cir. 1991), 946 F.2d 1428, 1435. However, "[a]ny variance from the procedure required by 46-12-211 that does not affect the substantial rights of the defendant **must** be disregarded." Section 46-12-213, MCA.

Therefore, if, as Anderson's attorney suggested at the change of plea hearing, he had already informed his client of the effect of his plea, then Anderson was not prejudiced by the District

10

Court's failure to do the same. The District Court's omission would, then, not have been a basis for setting aside Anderson's plea and sentence, and Sweeney would have had no duty to advise him of his right to appeal that omission.

The problem, for purposes of our review, is that no evidence was presented at Anderson's post-conviction hearing regarding the nature of advice given by Sweeney to Anderson prior to his change of plea. Specifically, we do not know whether Sweeney advised Anderson that because of the nature of his plea it could not be withdrawn. Therefore, we do not know whether the District Court's error was harmless, and whether failure to advise Anderson of that error caused Anderson to waive an appeal that could have resulted in his plea and sentence being set aside.

Therefore, we remand this case to the District Court for further evidence regarding the nature of Sweeney's advice to Anderson, and for findings on that subject by the District Court. If, based on the additional evidence, the District Court finds that Anderson was fully informed by Sweeney of the effect of his plea pursuant to § 46-12-211(1)(c), MCA, then the District Court should conclude that its failure to personally advise Anderson of that effect was, at most, harmless error. That omission would not have been a basis for setting aside Anderson's plea and sentence on appeal; and therefore, would not be an adequate basis for concluding that Anderson received ineffective assistance of counsel when he was not notified of that basis for appeal. On the other hand, if the District Court finds that Sweeney did not advise

li

Anderson that he would not be able to withdraw his plea, even in the event that the District Court ignored the State's sentencing recommendation, then the District Court's failure to so advise Anderson was an error which affected Anderson's substantial rights and would have been a basis for setting aside his plea and sentence. Sweeney's failure to advise him of that error, under those circumstances, would constitute ineffective assistance of counsel which would require that Anderson's plea and sentence be set aside.

For these reasons, we affirm the District Court in part and remand to the District Court for further proceedings consistent with this opinion.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

12

Justice W. William Leaphart, dissenting.

I dissent from our holding on issue number two and **specially** concur on issue number three. Section 46-12-211(2), MCA, clearly requires that in a 1(c) type plea agreement, "the court shall advise the defendant that, if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea." It is conceded that the court did not advise Anderson that he would not be allowed to withdraw his plea. This Court however, circumvents this clear statutory mandate by assuming that Anderson's counsel picked up the slack by explaining to Anderson the "implications of a paragraph (1)(c) agreement . . . and informed him of the consequences of changing his plea to guilty." The record does not support this assumption. The transcript of the change of plea proceeding reads as follows:

> THE COURT: Would you advise the court if this is a 1B or 1C plea agreement.
>
> MR. NEWMAN: You Honor, this is not a binding plea agreement. The agreement does advise Mr. Anderson and his counsel that the court is free to impose any statutory sentence. The State will recommend that a sentence be given, a particular sentence. We are going to recommend that the defendant be committed to the Montana Department of Corrections and Human Services for a definite period of time; five years on the underlying offense and two years consecutive for the use of a weapon. So we are recommending a commitment to the custody of the department for a definite period of time.
>
> THE COURT: So then is that a 1C?
>
> MR. NEWMAN: I believe it would fit under 1C, Your Honor.
>
> THE COURT: Do you understand that, Mr. Sweeney?
>
> MR. SWEENEY: Yes, your Honor.

13

THE COURT: All right. Stand up, Anderson. (The defendant complies.)

THE COURT: Is there a motion?

MR. SWEENEY: Your Honor, thank you. If it please the Court, as the prosecuting attorney told you, we've notified the prosecuting attorney that we wish to move to withdraw our former plea of not guilty, and my client, Jade Anderson, would instead enter a plea of guilty to the charge.

THE COURT: Is that what you want to do today, Mr. Anderson?

THE DEFENDANT: Yes.

THE COURT: Mr. Sweeney, have you fully advised your client of the consequences of a change of plea to guilty?

MR. SWEENEY: I have, Your Honor, and as Counsel stated for the State that we have entered into that plea bargain agreement, but I've explained to Mr. Anderson that that's not binding on Your Honor, and that you have the right to sentence him in accordance with the state law or to follow that plea bargain agreement, depending on what you want to do.

Although his counsel advised him that the plea agreement was not binding upon the Court, the record does not reflect any advice from counsel that, once Anderson changed his plea pursuant to the agreement, he would not be allowed to withdraw the plea. That aspect is the most significant "implication" of a (1)(c) type plea agreement. The fact that Anderson was advised that the agreement was not binding upon the court does not resolve the issue because a (1)(c) and a (1)(b) are both the same in that respect. That is, neither type is binding *upon the* court. The distinction is that a (1)(c), unlike a (1)(b) is binding *upon the defendant.* The statute requires that the court advise the defendant of this distinction. That is, if he enters a plea to a (1)(c) agreement and the court

*14*

rejects that agreement, he cannot withdraw his plea. The record does not support a finding that anyone, court or counsel, advised defendant of the special implications of a (1)(c) agreement.

The Court concludes that, since this was purportedly a (1)(c) agreement, the District Court was not required to allow Anderson to withdraw his plea pursuant to § 46-12-211(4), MCA. That assumes, however, that the defendant understands what a "1C" agreement is after having been properly advised, by the court, of the nature of his commitment. In the absence of such advice from the court, we have no basis for concluding that the defendant understood the nuances of the term of art "1C". Without the proper admonition, the agreement is, in effect, no different from a (1) (b) agreement and the defendant should be allowed to withdraw his plea. If this issue were before us on a direct appeal, I would reverse and allow him to do so. However, this matter is before us on an appeal from a petition for post-conviction relief. Accordingly, Anderson is procedurally barred from raising any issues which he could have, but failed to raise on direct appeal (§ 46-21-105(2), MCA) unless he can show that his failure to raise the issue on appeal was due to ineffective assistance of counsel. That leads to issue number three wherein the court remands for a further hearing on the question of what precisely Sweeney advised Anderson at the change of plea stage and what was his subsequent advice to Anderson concerning his appeal rights. I concur with the remand for a hearing as to the nature of counsel's advice concerning appeal rights. I dissent from the remand to the extent that it opens up

15

the question of whether counsel, at the change of plea stage, advised Anderson that a (1)(c) agreement is binding upon him thus rending the court's omission harmless error.

The Court remands this matter to the District Court for a further hearing as to the particulars of defense counsel Sweeney's advise to his client Anderson. Specifically, did Sweeney advise Anderson that he would not be allowed to withdraw his plea even if the court rejected the agreement. If Sweeney did advise Anderson of this, then the Court concludes that the district judge's omission would be harmless error. If Sweeney did not, then the court's omission would not be harmless and Sweeney would then have had an obligation to advise Anderson that this omission would constitute a basis for a valid appellate challenge to his plea and resulting conviction.

In my judgment, the statutory requirement (§ 46-12-211(2), MCA) that the court advise the defendant of the consequences of a (1)(c) agreement, on *the record,* was designed to avoid this type of 'tis-t'aint argument between attorney and client. When the plea agreement itself, the Acknowledge of Waiver of Rights by Plea of Guilty Form, and the record all fail to disclose the irrevocable nature of the plea, we must assume that the defendant was not properly advised as required by law. There is no basis for giving the prosecution a fourth bite of the apple by remanding for a further hearing in which we pit counsel against client in hopes of divining what the defendant really knew about (1)(c) agreements independently of what he was informed by the Agreement, the Waiver

16

of Rights Form or the District Court. I would reverse and remand for a hearing solely on the question of whether Anderson received ineffective assistance of counsel with regard to his appeal rights. I would not reopen the question of whether counsel, at the change of plea stage, independently of the court, advised Anderson of the binding nature of a (1)(c) agreement. The record is clear that the Agreement itself, the Waiver form and the court all failed to advise Anderson that he could not withdraw his (1)(c) agreement. This omission affected his substantial rights and was not harmless error. The only remaining question is what advice did Sweeney give to Anderson concerning his right to appeal based on the court's failure to comply with § 46-12-211(2), MCA. If counsel failed to advise him of the omission and of his right to appeal based on that omission, then Anderson is entitled to post-conviction relief.

_____
Justice